## JAMES GLENN and others' Lessee, *vs.* CALEB W. SPRY.

A testator, by his will executed in 1799, devised to his son C. "all the land I now possess," directing him to pay to his son J. $120 per annum, until the latter attained the age of twenty, and then $1000 to set him up in business; and "in case my son C. should die before he arrives to the age of twenty-one, or have a lawful heir, then my son J. shall have my aforesaid land." HELD :

That C. took an estate in fee in the land under this will, by reason of the sums directed to be paid to his brother J., and having died intestate and

without issue before attaining twenty-one, and *without having paid the legacies*, the land vested in J., and the charges became extinct by the union of the title and lien in him, and *he also took a fee-simple estate* in the land.

APPEAL from the Circuit Court for Kent county.

*Ejectment* by the appellants against the appellee for certain lands in Kent county. The case was submitted to the court below upon a statement of facts, as follows:

James Milward being seized of the lands in controversy, by his will executed in 1799, devised as follows:—"*Imprimis.* I give, will and bequeath, unto my son, Charles Milward, all the land I now possess." "*Item.* I order, and my will is, that my son, Charles Milward, shall give or pay, or cause to be given and paid, unto my son, James Milward, or his guardian, $120," for his boarding, schooling and clothing, "and that my son Charles shall not sell, lease or convey, my aforesaid land without first putting into some channel to be received the aforesaid sum of $120, to be paid annually, until my son James shall arrive at the age of twenty, and then my son Charles shall pay in hand unto my son James $1000, to set him up to any business he may choose." He then disposes of his negroes among his daughters, and then follows this clause:—"*Item.* I order, and my will is, in case my son, Charles Milward, should die before he arrives to the age of twenty-one, or have a lawful heir, then my son, James Milward, shall have my aforesaid land."

Charles Milward entered upon the lands and died shortly before attaining twenty-one, intestate, without issue and unmarried, and without paying the legacies bequeathed to James by his father's will. James, at the age of twenty-one, entered into possession of the lands and held them until 1850, when he conveyed them by deed to the defendant, Spry, and died in 1851. The plaintiffs were the heirs at law of the testator. The court, (HOPPER, J.,) gave judgment for the defendant, from which the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*B. C. Wickes* for the appellants. The sole question for consideration in this case is, whether, under the will of his father, James Milward, took an estate in fee or for life only? The appellants hold, that the devise to James is but the common case of a general devise of land without any words of limitation, and cannot be aided by the preceding charge upon the land in his favor, under the devise to Charles.

The whole doctrine here involved is fully discussed in *Beall vs. Holmes*, 6 *H. & J.*, 205. The leading principles governing this case, as therein collected, are recognised and confirmed by all the leading authorities upon the subject, see 3 *Greenlf's Cruise*, 222, 228, 262, while the case itself has been sustained as a leading authority by this court in its subsequent decisions. 5 *G. & J.*, 461, 462, *Dougherty vs. Monett's Lessee.* It is there, (6 *H. & J., pages* 207 *and* 208,) clearly laid down that the established rule of law is, "that express words of limitation, or words tantamount, are necessary in a devise to pass an estate of inheritance." The intention of the testator is to govern, yet that intention must be gathered from the words used, and when so ascertained, and not otherwise, shall prevail, "*if there be also found in the viscera apt words to effectuate it.*" The word "land" in its largest sense, as "all my lands," "all the land I now possess," "all my aforesaid land," is not sufficient, though the intention is ever so apparent. The only exception to the rule requiring apt words, is that of cases falling under the head of "necessary implication," and the only two cases cited and recognised in that case under the rule of "necessary implication," are those of a general devise of land with a charge upon the devisee, and of a devise generally with a limitation, even if the devisee dies under the age of twenty-one. The first upon the ground "that the devisee *might be injured by the charge* if he took but a life estate, and therefore the testator *necessarily meant* to give him the inheritance." The second because the "devise over being limited only upon the contingency of his dying during his minority, the *necessary implication* is that

he intended to give him an absolute estate in fee if he should attain his full age."

Now I would suggest whether the phrase "necessary implication" has not grown to have a purely *technical signification*, embracing only the two classes of cases recognised under it in the above decision? But even as a general rule, to be applied at the discretion of the court, no case can claim such application, save where the intention to convey the inheritance is so clearly demonstrated as that any other presumption is an absurdity. Measured by the principles of this decision, we think James can claim but a life estate.

Charles did not take a fee by force *of the language of the will*, but by virtue of the charge upon the land *and* the limitation over, in the event of dying in his minority without issue. The *language* is similar in both devises, and by force of *it* James would, like Charles, take but a life estate. Charles takes a fee only by force of the charge and limitation over, which are only attached to the *first* devisee, and cannot enlarge the devise to James. 3 *Greenlf's Cruise*, 84. The principle that no matter how clear the intention, there must be either apt words or necessary implication to disinherit the heir, would sufficiently meet it. The principle that the charge enlarges the estate to a fee, upon the ground that the devisee might else *be injured by the act of the testator*, does not apply to James, for though he too might *be injured* in case Charles died leaving the charge unpaid, and James took the land and died shortly thereafter, yet the broad line of difference is that *Charles' injury* might have resulted from *the act of the testator*, which the law will not presume, whilst *James' injury* would be merely the result of the accident of Charles' death, with which the testator had nothing to do.

The case of *Moone on Demise of Fagge, vs. Heaseman, Willes' Rep.*, 138, will be relied upon by the appellee. To the authority of this decision as controlling this case I object, for three reasons:—*First*, because no other authority upon this point can be found to sustain the principles in this devise upon which the appellee must rely in this case. *Second*, because

they are in direct conflict with the principles recognised in *Beall vs. Holmes. Third,* because that part of the decision which must be principally relied on by the appellee, amounts to little more than a mere *dictum* of the court, while the main reason that governs the decision in that case can have no application to this. See also a review of this case, in *Powell on Devises,* 398 *to* 404, (22 *Law Lib.,* 214.)

*George Vickers* and *E. F. Chambers* for the appellee.

1st. The intention of the testator is the polar star in the construction of his will, and courts have always been anxious to lay hold of any expression in a will, however slight, to give such effect to it as would carry the fee in land where words of limitation are wanting, such as "Estate," "Property," "Real Effects," "Inheritance," "Remainder," "Reversion," "Interest," "Part," "Share," "Assigns," "Successors," "Executors," "His Blood." 2 *Powell on Devises,* 410. *Preston on Estates, (second part,)* 77.

2nd. Wherever any charge, *however small,* is made on the devisee, to whom the real estate is given without words of limitation, it converts the estate into a fee. 2 *Powell on Devises,* 379, 380. The reason of this rule is, that the testator intended a benefit to the object of his bounty, and that by *no possibility* should he *lose* by the devise. Apply this rule to the devises here. It is conceded the charge upon Charles enlarges his estate to a fee. Is not the estate to James by a parity of reasoning converted into a like estate? Is there any distinction in principle between the case of a devise to A, without words of limitation, he charged with the payment of a legacy to B, and where the same lands, on the death of A, under twenty-one, are given to B? As A took a fee because he was bound to pay a legacy to B, should not B, who never received the legacy, take a fee in the same land which is virtually a substitute for the legacy? Suppose B was directed by the will to pay the legacy to C, on the death of A, the land passing to B, would not B take a fee because of the direction to pay C? If he is to pay himself,

or *retain* the legacy instead of paying over, is not the effect the same? There is no apparent reason why B should take a fee where he is directed to pay to another, and not take a fee where he *loses* the same sum by its sinking into the estate. Again, if James took but a life estate, he might be injured rather than benefitted. His legacy might be of greater value, because he might die before he could realise the amount of the charge from the land. The same reason operates in both cases equally strong on the mind of the testator. He intended a *benefit* in both cases, and by consequence a fee.

Chief Justice Willes and his associates, in the case of *Moone on Demise of Fagge, vs. Heaseman, Willes' Rep.*, 138, have decided that the land was given to the second devisee as a *substitute* for the legacy, and a fee was implied. *Preston on Estates, (second part,)* 230, concurs with *Chief Justice Willes*, and refers to this case as authority. Some doubt is attempted to be thrown over this case in 2 *Powell on Devises*, 404, but no conflicting case is adduced, and it is evident the distinguishing point in the argument in *Willes*, is overlooked by *Powell*. The latter is treating of a devise in fee enlarging a devise over without words of limitation, but the fact that the devise over is to a legatee who thereby loses his legacy by taking the land in lieu of it, is not adverted to by *Powell*. It is believed that no case in conflict with the doctrine in *Willes* exists. In 20 *Wendell*, 576, *Barheydt vs. Barheydt*, the court lay down the general and unqualified rule, that a charge enlarges an estate for life to a fee in "every case where *loss is possible*," and the decision in *Willes* is referred to as sustaining the position. The case of *Reed vs. Hatton*, 2 *Mod. Rep.*, 26, is also cited as an authority for the rule.

It follows then:—*First*, that the legacy to James charged upon Charles gave a fee to the latter. *Second*, the devise to James confers upon him a fee:—1st, because of the substitution of the land for the legacy; 2nd, because the law presumes the testator intended a benefit to James, and a different construction might make him the loser rather than gainer by a devise of the land to him; 3rd, because the reason and phi-

losophy of the construction which gives a fee in land on any charge upon the person of the devisee, however small, are applicable in all their force to the case of a devise over of the land to the legatee. The analogy holds in every feature, and the equity and justice of such an application are obvious, because the intention of the testator to give the same quantity of estate to his sons in the contingency provided, is consentaneous with his clearly expressed desire to confer material benefits upon both, with the relation of sons, the nature of the property, the bestowal of his personal estate upon his daughters, with the reason of the gift to his second son, and the general scope and object of the will.

*J. B. Ricaud* for the appellants, in reply, further argued the points presented by his colleague, *Mr. Wickes,* and insisted that the criticism of *Mr. Powell,* in his work on *Devises, 22 Law Lib.,* 214, upon the case in *Willes,* had shaken its authority, and that the rule of construction which enlarges the estate to a fee, by a charge in gross upon the lands, must be restricted to the case where the estate is charged *in the hands of the devisee,* and that no case can be found that has ever decided the principle that where a testator has, by a charge upon the lands, enlarged the estate thereby devised from an estate to life to an estate in fee, and where the legatee, whose legacy constitutes the charge upon the land, is afterward, in the same will, in the event of the death of the first devisee before twenty-one years of age, given, as in the present instance, an estate for life, that the estate is enlarged in his hands to a fee by reason of the legacy previously given to him. No such principle has ever been stated by any elementary writer, but the principle has always been, as correctly stated by *Mr. Powell,* (22 *Law Lib.,* 211,) that where the estate is charged *in the hands of the devisee* a fee passes. He also cited *Middleton vs. Swain, Skinner,* 339; *Skinner,* 385 *and* 563; 2 *Wilson,* 80, *Roe on Demise of Kirby, vs. Holmes,* and 8 *Term Rep.,* 64, *Child and Wife, vs. Wright, et al.*

TUCK, J., delivered the opinion of this court.

It is clear, upon the adjudged cases in England and in this country, that Charles Milward, under his father's will, took an estate in fee, by reason of the sums directed to be paid to his brother James. This doctrine is fully recognised in *Beall vs. Holmes*, 6 *H. & J.*, 208, and is conceded by the counsel for the appellants. The question for our determination is, whether James Milward took an estate for life or in fee, after the death of his brother Charles, without having paid these legacies.

The land devised was charged with an annuity, and a sum in gross in favor of James. When, by the death of Charles, the land vested in James, these charges became extinct by the union of the title and the lien in him. *Mitchell vs. Mitchell*, 2 *Gill*, 236.

It is contended on the part of the appellee, that as the legacies failed of effect by the death of the first devisee, James took an estate of inheritance, by implication, in satisfaction of the legacies; but the counsel for the appellants insist upon the application of the general rule of law, "that express words, or words tantamount, are necessary in a devise to pass an estate of inheritance," for which they rely upon *Beall vs. Holmes*, as conclusive of the present appeal.

That case, while the general rule is stated as decisive of the point then before the court, also shows, that a fee may pass by implication, upon the principle of giving effect to the intention of the testator, and that the general rule does not prevail in a devise without words of limitation, if words be added, from which an intention to give the fee can be clearly collected. Several expressions are mentioned as examples, and the case of a charge upon the land, or against the devisee personally, and a devise to one generally, with a limitation over, upon a contingency, are stated as further exceptions. We do not suppose, as suggested in argument, that the court are to be understood as having stated these as the only qualifications, but merely as furnishing so many illustrations of the doctrine advanced, predicated upon the presumed intent of

the testator. There are other instances given in 2 *Powell on Devises*, ch. 19, 20, and 2 *Preston on Estates*, 151, et seq., which, under the appellants' view of *Beall vs. Holmes*, would virtually cease to be exceptions at all.

If we apply to the case before us the reasoning of the law on which a general devise of land is enlarged to a fee, where the land or the devisee is made answerable for a legacy to another, it is difficult to perceive how the same result can be avoided, when the title to the land and the charge become united in the person entitled to the sum to be paid. The ground of the rule is this: Every devise is intended for the benefit of the devisee, and when a devise is thus encumbered, unless the devisee were to take the fee, he might, by dying before he had reimbursed himself the amount charged out of the land, be a loser by the devise, and what was intended as a benefit become an injury; and the rule applies to every case where a loss is possible. *Cro. Eliz.*, 204, 379. *Cro. Jac.*, 599. *Willes*, 138. *Cowp.*, 356. 3 *Term Rep.*, 356. 5 *East*, 87. 2 *Powell*, ch. 19. *Collier's case*, 6 *Rep.*, 16, a. 2 *Mod.*, 26. 2 *Preston*, 207, 230. 20 *Wendell*, 580. If the land, on the death of Charles, had been given to another person than James, but still charged as it was in the hands of Charles, the second devisee would have taken the fee, for the same reason that Charles had taken that estate, and the intended benefit to James would not have failed. The same presumption must be made in aid of James as was raised in behalf of Charles, and of the second devisee in the case last put, in order to pass the fee, viz., that the legacy to James was intended for his benefit; and if it appears, from the will, that he might lose his legacy by the death of Charles, unless his devise was also enlarged to a fee, it must be inferred that the testator intended that his will should receive that construction. If Charles had died soon after his father, the land would still have remained liable for the benefit of James; but, as the result of the appellants' argument, if James had died immediately after Charles, the legacies being then unpaid, he could have derived no benefit under his father's will, because

the charge, having merged in the estate, ceased to be a claim against the land, and James' interest having terminated by his death, before he had enjoyed the land long enough to raise thereout the sums bequeathed to him, the land would have passed to the heirs of Charles, discharged of the incumbrance.  Thus what was designed as a benefit to James might have proved of no value whatever, and he alone, of all his father's children, would have been virtually disinherited, except as to the small interest he might take as one of the heirs of his brother Charles.  As to Charles the fee is created, by implication, to prevent a possible injury to him, if he should happen to die before raising the charge in favor of James out of the profits of the estate; and as to James, the same implication is made, on the death of Charles, without paying the legacies as a satisfaction therefor, and which, possibly, he might not otherwise enjoy.  It makes no difference if the sum be less than the value of the land devised. No regard is paid to the disparity, however great.  2 *Mod.*, 26.  The cases are collected in 2 *Preston*, and the reason of this doctrine fully stated.

The only decided case involving the very question now propounded as to the estate of James in this land, is that of *Moone vs. Heaseman, Willes*, 138.  That was a devise to one for life, and at her death, to S., paying to each of her sisters, E. and M., five hundred pounds; and if either of them died, the survivor to have the legacy; and if S. died, the farm to be divided between the survivors, and in case all three, S., E. and M., died before their mother, then over in fee.  There were no words of limitation as to S., E. or M.  By the strict terms of the devises to them each took only an estate for life. It was held that S. took a fee-simple estate, because of the sums directed to be paid by her to E. and M., and as to E. and M. the court said: "The next question, is what estate they took on the death of S., without paying their legacies? And if the words of the will had gone no farther than, that in that case the farm should be divided between them, yet we should have thought that they would have taken a fee.  For

it is plain that the testatrix intended that they should have the same interest in it as S., and it is given to them in lieu of their legacies, which they might have disposed of as they pleased, and therefore it is highly reasonable that they should have the same power over the estate." They then proceed to show that this construction was correct, from other portions of the will. The counsel for the appellants suggest that this decision has been called in question by Mr. Powell, (2 *Vol.*, 399, 404,) but we think that the remarks of that writer do not apply to the point of the case now relied upon, but to the devise over to the right heirs of the mother, in the event of all the daughters dying in her lifetime. He introduces his objections to this decision under the *third* division of chapter 19, which treats of the question, whether a fee is raised by an alternative devise in fee, and not under the *second* division, which relates to estates enlarged by implication, by a charge imposed on the devisee. Besides, this judgment was affirmed on appeal to the King's Bench, (*note* (*a*,) *page* 144,) and is referred to by Preston, and by Powell himself, page 380, as authority for the doctrine of estates of inheritance, by implication, where the devisee, or the land in his hands, is charged with the payment of a sum to another, without questioning the correctness of the decision as to the title of E. and M., merely upon the death of their sister without having paid their legacies. But, on the contrary, he says that the rule "applies in every case in which loss is possible." If, therefore, we have shown that there was a possibility of loss to James of the benefit intended for him by his father's will, (and no purpose could be more meritorious than providing for his education and commencement in life,) we may claim this author as sustaining the view we have taken of the present case. The objection that this is the only case in support of the appellee's title cannot avail. It is to be observed that there is none to the contrary, and being, as we think, in accordance with the principle of numerous adjudications on an analogous question, we may safely rely upon it in affirmance of the judgment below.

*Judgment affirmed.*