(Decided July 29th, 1859.)

---

ISAAC S. STRAWBRIDGE and Others *vs.* THE BALTIMORE and OHIO RAIL ROAD COMPANY.

A bond to the Baltimore and Ohio Rail Road Company, in the penalty of $3000, recited that the principal obligor had been "appointed by the said company, as *ticket and freight agent,* at Ellicotts Mills," and was conditioned for the faithful performance of the duties of *said office* so long as he shall hold the same. At the date and delivery of the bond, Ellicotts Mills was a *second class station,* but the company subsequently made it a *first class station.* At first class stations a *greater amount* of *freight* is paid than at second class stations, but the duties of the ticket and freight agent are the same at both, viz., to receive all sums payable at his station both for freight and passengers. HELD:

That the *change* in the regulations of the company, by which this was made a first class station, did not discharge the *sureties* on this bond.

In construing this bond regard must be had to the *intention* of the parties when it was executed, and the nature of the duty of the obligor and the character of the obligee must be regarded as explanatory of such intent.

The *nature* of the agent's *duties* was not *changed*, and no *new* or *different duty* was imposed on him by the alteration in the regulations of the company, making Ellicotts Mills a first class station, its whole effect being to make *more freight* payable at that station than before.

The sureties, in executing this bond, must be regarded as having contracted, with reference to the right and authority of the company, by their charter, to make changes, from to time to time, in their regulations, as to their rates of fares and freights, and the points for receiving or delivering freight, in order to carry on successfully their business operations.

APPEAL from the Circuit Court for Howard County.

*Debt*, brought on the 15th of March 1858, by the appellee against Strawbridge and his sureties, upon a bond given to the plaintiff. Plea, *nil debet*, with an agreement that thereunder all defences may be taken which might be availed of under any form of pleading, and all evidence admitted which would be admitted under any statement of breaches and any pleas filed in the case, and that the defendants shall, each of them, have all advantage they might have if they had severed in pleading.

*Exception.* The bond and the facts of the case are fully stated in the opinion of this court. The plaintiff asked the court to instruct the jury, that if they find from the evidence the execution and delivery of the bond offered in evidence, and that Strawbridge was, from the time of its execution and delivery, ticket and freight agent of the company, at Ellicott's Mills, and continued to act as such agent until the 21st of July 1856, then the plaintiff is entitled to recover all sums which the jury may find from the evidence he received as such agent, both for passenger tickets and freight, during the time he so acted as such agent, except for so much as the jury shall find from the evidence has been paid over to the company.

The sureties in the bond then asked instructions, in substance as follows:

1st. If the jury shall find from the evidence, that at the time of the execution of the bond, Strawbridge had been appointed freight and ticket agent at Ellicotts Mills, then a second class station, and that his duties as an agent, at such second class station, was to receive money for tickets sold by

him, and to deliver all freight that might be sent from any first and second class station, but not to receive any money for freight except what was sent from Ellicotts Mills to some second class station, and that he continued to act as agent aforesaid, until December 1854, when the plaintiff made Ellicotts Mills a first class station, and that it is the duty of an agent at a first class station to collect all money on freights, from all first and second class stations, that might be sent to Ellicotts Mills, and also all moneys on freight sent from Ellicotts Mills to any second class station, and for tickets sold by him at said station, and that Strawbridge was, at that time, notified by the plaintiff, that thereafter said station was a first class station, and in consequence of said change and notice, larger amounts of money were receivable by him than he could have received as agent of said second class station, then the plaintiff is not entitled to recover from said sureties the sums of money received by Strawbridge and unaccounted for after said station was made a first class station.

2nd. If the jury believe the facts stated in the defendant's first prayer, then the sureties are only liable for such sums of money as Strawbridge received and did not account for after the change to a first class station, which it would have been his duty to have received if it had continued a second class station.

3rd. If the jury believe that after the execution of this bond, the station at Ellicotts Mills was made a first class station, and that Strawbridge was appointed ticket and freight agent at said station, as an agent at a first class station, then the sureties are not liable for any sums of money received and unaccounted for by him, as agent of a first class station.

The court (BREWER, J.) granted the plaintiff's prayer and rejected those of the defendants. To this ruling the defendants excepted, and the verdict and judgment being against them, appealed.

The causes were argued before LE GRAND, C. J., TUCK and BARTOL, J.

*Wm. H. G. Dorsey* and *Thos. S. Alexander*, for the appellants.

The appellants contend that by making Ellicotts Mills a first class station, the company so changed the duties and liabitities of this agent, that the sureties on his bond were released from all responsibility on account thereof. This change was not in the ordinary course of business, but an entire change of duties and responsibilities, by which they relieved the bond of *another* officer, and attempted to throw additional responsibilities upon the sureties of this agent: the company has not the power to begin with a distribution of duties and liabilities amongst its agents, and thus delude these sureties into securityships for such officers, and then to *change* that distribution so as to affect their liabilities. At the time this bond was executed, Ellicotts Mills was a *second class station*, and this was known to these sureties, and is to control its construction just as much as if it were impressed *on the face of the bond*. The decisions, if any such are to be found, that the contract is to be construed most strongly against the surety, are contrary to principle and against law. The obligation of a surety is not to be enlarged by implication or by taking ambiguous words of the bond most strongly against him. To show that this change is such as to discharge these sureties we refer to *Burge on Suretyship*, 114, 115; 9 *Law Lib.*, 56; 9 *Wheat.*, 703, *Miller vs. Stewart;* 5 *Md. Rep.*, 103, *Mayhew vs. Boyd;* 1 *H. & G.*, 324, *Union Bank vs. Ridgely;* 6 *G. & J.*, 247, *Sasscer vs. Young.*

*Thos. Donaldson*, for the appellee.

It is indisputable law that any departure as between the obligee and the principal obligor of a bond from the terms of the contract, in their true intent and meaning, operates as a discharge of the sureties, and the authorities cited on the other side clearly support such a proposition. But these authorities though carrying the law of suretyship to the verge of immorality, do not touch the present case. The true question here is, what are the intent and meaning of the contract as shown by a true construction of this bond? On the part of the appellee it is insisted:

1st. That the words of the bond clearly show the intention that the sureties are to be bound for their principal, "as ticket and freight agent at Ellicotts Mills," *generally*, not merely as a second class agent or any other class agent. The words of the bond in themselves, include all the duties consistent with the office of *"ticket* and *freight agent* at Ellicotts Mills." When the words are *general*, the contract is for all liabilities or duties within the terms, and the words are to be construed against the sureties.

2nd. The nature of the agent's duties was never changed at all by making Ellicotts Mills a first class station. The complaint is not that the *duties* of the office were changed but that the *amount* of freight he was to receive was *increased.* The bond, however, made the sureties liable for all money received by Strawbridge for freight, and for tickets at Ellicotts Mills, up to the amount of the penalty of $3000. By the change of regulations making this a first class station no new duty was imposed on the agent. He was still to receive money on the same accounts, and at the same place, and the responsibility of the sureties was not increased beyond the amount for which they had originally stipulated.

3rd. The bond of such an officer of a rail road company, must be construed to cover all the duties which are annexed to the office, from time to time, by the company whose servant he is, if those duties are consistent with the nature of the office itself, and sureties are presumed to enter into the contract, with reference to the authority of the company under their charter, to make all needful regulations for the transaction of their business, and to change them from time to time, as the exigencies of their business may require. It is perfectly well understood by all persons dealing in any way with rail road companies, that they must, from time to time, make changes in their regulations, as for instance, in the time of running their trains, the hours of departure and arrival, the amount of fares and freight, the points for the receiving or delivering goods transported, the manner, terms and places of receiving payments for passengers and freight, &c. If the bond of a ticket and freight agent were discharged in such a case as the present,

because of a regulation which had the effect of merely enlarging the receipts at the station, then any change in the rate of freights or fares, or in the rate of speed, or in the hours of departure or arrival, or any change which would increase, or might by possibility have the effect of increasing the receipts, would discharge the sureties. Thus practically there could be no official bond given by such agent, which would be good even for a single week. But such cannot be the law. The case is like the case of the bond of a *collector*, when an *additional tax*, in amount, is imposed, which does not discharge the bond.

In support of these positions the appellee refers to *Hurlstone on Bonds*, 32 in 9 *Law Lib.*; *Burge on Suretyship*, 42, 46, 54; 1 *Term. Rep.*, 291, *note (a) Barclay vs. Lucas*; 3 *Bing.*, 71, *Williams vs. Rawlinson*; 1 *Pet.*, 73, *Minor vs. Mechanics Bank of Alexandria*; *R. M. Charlton*, 29, *Planters Bank vs. Lamkin*; 2 *Paine C. C. Rep.*, 189, *Post Master General vs. Munger*; 3 *Ellis & Black.*, 653, *Mayor of Berwick vs. Oswald*; 6 *Bing.*, 244, *Hargreave vs. Smee*; 12 *East*, 227, *Mason vs. Pritchard*.

BARTOL, J., delivered the opinion of this court.

Just prior to the 9th of April 1853, Isaac S. Strawbridge, one of the appellants, was appointed "ticket and freight agent of the Baltimore and Ohio Rail Road Company, at Ellicotts Mills." On the 9th of April 1853, he and the other appellants executed and delivered to the rail road company the bond upon which this action was instituted. The penalty of the bond is $3,000; and after a short recital of the fact that Strawbridge had been "appointed by the said company, *as ticket* and *freight agent* at Ellicotts Mills," the condition is stated in these words: "that if the said Isaac S. Strawbridge do not at all times hereafter, so long as he shall hold said office, well and faithfully perform the duties of the said office, so that the said company shall suffer no loss, damage or injury on account of any act or acts, either of omission or commission of the said Isaac S. Strawbridge, and without wasting, embezzling, spending, or unlawfully making way with

the money, property, or effects of the said company, or such as may come into his hands, or under his control, while holding the office aforesaid, then, if the said Isaac S. Strawbridge, Thomas McCrea, John Collier, or Thomas Jenkins, or either of them, or their, or either of their heirs, executors or administrators, shall make due and sufficient recompense unto the said company for such loss, damage or injury, wasting, embezzling, spending, misapplying or unlawfully making way, then this obligation to be void—else in full force."

Strawbridge held the situation of "ticket and freight agent at Ellicotts Mills," from the date of his appointment, up to the 21st July 1856. At the last named date, there was due to the rail road company by Strawbridge, for passenger tickets sold by him at Ellicotts Mills, and for freights received by him at the same place, the sums, for which with interest thereon, the appellees recovered judgment in the court below.

After the execution and delivery of the bond, (in the month of December 1854,) the rail road company made Ellicotts Mills a *first class station*, it having previously been a *second class station*. At the first class stations a greater amount of freight is paid, than at the second class stations; the duties of the ticket and freight agent are the same at both, viz: to receive all sums payable at his station for both freight and passengers.

The appellants contend that the change in the regulations of the company, by which Ellicotts Mills was made a first class station, worked a discharge of the sureties from the obligation of their bond; because in consequence of that change Strawbridge, the ticket and freight agent, received a much larger amount of money than he would otherwise have done.

It is well settled that "the liability of a surety is not to be extended by implication beyond the terms of his contract." 9 *Wheaton*, 703, 2 *N. R.* (5 *Bos. & Pull.*,) 180. 12 *East.*, 405.

It is equally well settled that "any dealings with the principal debtor, by the creditor, which amount to a departure from the contract by which a surety is to be bound, and which by possibility might materially vary or enlarge the latter's lia-

bility, without his assent, discharges the surety." *5 Md. Rep.*, 110. *6 G. & J.*, 247.

The application of these principles to the present case must depend upon the true construction of the bond. In the recital it is declared that the principal obligor "was appointed ticket and freight agent of the Baltimore and Ohio Rail Road Company at Ellicotts Mills," and by the condition, the sureties bound themselves for the faithful performance by him of the duties of the said office, so long as he should hold the same. The liability under the bond to the extent of the penalty is for the officer *generally* as ticket and freight agent at Ellicotts Mills, without reference to the fact, whether that was a second class or a first class station. In *Burge on Suretyship*, 54, the author speaking of the liability of a surety says: "He will be liable to the full extent which the terms of the obligation, or the nature of the act for which he has obliged himself, will warrant. Thus, if the terms are general and indefinite, he is bound for all the obligations of the principal debtor necessarily incident to, or resulting from, the contract or act for which he has become surety. In this case he is said to be a surety *in omnem causam.*"

In construing this bond regard must be had to the intention of the parties when it was executed. In *Metcalf vs. Bruin*, 12 *East.*, 408, Mr. Justice Bailey said: "This bond must have such a construction as the parties meant it to have at the time they entered into it." The same thing was said by the Court of Appeals in the case of the *Union Bank vs. Ridgely*, 1 *H. & G.*, 433, and in *Hurlstone on Bonds*, 32, *(9 Law Lib.,)* it is said: "The nature of the duty of the obligor, and character of the obligee, will be regarded as explanatory of the intent of the parties." *Mayor of Berwick vs. Oswald*, 72 *Eng. C. L. Rep.*, 295, in the *Queens Bench* and the same case in the *Exchequer Chamber*, 77, *Eng. C. L. Rep.*, 653.

Looking at the nature of the office held by Strawbridge, and the extent, objects and powers of the corporation, we have no doubt that the bond was intended to cover the whole defalcation charged against the agent in this case.

The nature of his duties was not changed, no new or dif-

ferent duty was imposed upon him by the alteration in the regulations of the company, making Ellicotts Mills a first class station. He was still to receive money for passengers and freights at the same place. The whole effect of the alteration was to make more freights payable at that point than formerly.

In *Minor and others, vs. The Mechanics Bank of Alexandria,* 1 *Peters,* 46, which was a suit on the official bond of a cashier, the court said, (page 73:) "The bond of the cashier must be construed to cover all defaults in duty, which are annexed to the office, from time to time, by those who are authorized to control the affairs of the bank, and sureties are presumed to enter into the contract, with reference to the rights and authority of the president and directors under the charter and by-laws." The condition of the bond was for the faithful execution of the duties of *cashier,* and it was held responsible for the default of the cashier in not discharging certain duties which had been before performed by the teller, and usually belonged to that office. It is true, in that case, the by-laws pointing out the duties of the cashier provided, "that he shall do and perform all other duties that may from time to time be required of him by the president or board of directors relative to the affairs of the institution," and there was a resolution of the board, passed before the cashier's appointment, which devolved upon him the duties of teller.

The authority is therefore not in all respects applicable to the case before us. But the language cited from the court's opinion expresses the true rule by which this contract must be governed.

It is indispensably necessary for such a corporation as the appellees, "in order to carry on successfully their vast and complicated business operations," to make changes from time to time in their regulations, to alter their time tables, the rates of charges for passengers and freight, the points for receiving or delivering merchandize, and the manner, terms and places of receiving freights, &c. Such powers are conferred by the charter, and the appellants in executing their bond, must be construed as contracting with the company, "with reference to

their rights and authority," in the management and regulation of such matters. It follows, from what we have said, that in our opinion the prayer of the plaintiff was properly granted, and those offered by the defendant were properly refused by the Circuit court.

                                        *Judgment affirmed.*
(Decided July 15th, 1859.)