The First National Bank of Baltimore *vs.* Charles Gerke.

*Principal and Surety—Alteration of Risk—Construction of Contract—Discharge of Surety.*

The obligation of a surety is not to be extended beyond what the terms of the contract fairly import.

In the case of a surety standing bound for the fidelity or capacity of a principal appointed to a particular office or employment, if the nature of the employment is so changed by the act of the employer that the risk of the surety is materially altered from what was contemplated by the parties at the time of entering into the bond, the surety has a right to say that his obligation does not extend to such altered state of things.

And in order to arrive at the intention of the parties, the contract itself must be read in the light of the circumstances under which it was entered into.

G. became surety on a bond given to a banking corporation by L. The bond recited the appointment of L. as a clerk in the bank, and was conditioned for the faithful and honest performance by L. during the time he should continue in its employment, of all the duties and services in said bank which should "from time to time, be required of him by the board of directors of said bank, or the president or cashier thereof, or by or under their authority," and for his faithfully and honestly fulfilling "all the trusts that shall be by them, or by or under their authority, in him reposed, in his said appointment of clerk of the said" bank. The clerkship to which he was appointed was that of assistant book-keeper. His position was repeatedly changed, and finally he was made note teller and discount clerk, in which position large sums of money were collected and received by him daily, and his responsibility was greatly increased. While in this last position he committed defalcations. In an action on the bond brought by the bank, it was Held:

1st. That by the terms of the bond it was competent to the board of directors, or to the president or cashier, to impose additional con-

First National Bank of Baltimore *vs.* Gerke.

sistent duties upon L. to those then pertaining to the position of book-keeper, but not to impose duties upon him that would entirely change the nature and grade of his position in the bank, and enhance his responsibility, and thereby essentially increase the risk to the surety on his bond.

2nd. That the change in the employment of L. involved a material increase of risk to the surety, who was thereby released from his obligation under the bond.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*J. Alexander Preston*, for the appellant.

" Whilst it is an undoubted proposition, that the liability of the surety is not to be extended by implication, beyond the terms of his written contract, by which his responsibility is to be measured, the bond constituting the contract, must have such construction given to it, as to carry out the intention of the parties thereto, and in this respect there is no difference between such contract and any other." *Engler vs. People's Fire Ins. Co.*, 46 *Md.*, 333.

What position did John D. Lisle occupy in the bank? From the beginning to the end of his career, he was a clerk. It is true his duties varied, but they were all of a clerical character, and the obligation of the bond was to perform such clerical duties as the authorities of the bank should direct. The bond in its terms was general, not to perform the duties of assistant book-keeper, but "faithfully and honestly fulfil all the trusts" that should be imposed on him by the proper authorities. No authority either in this State or elsewhere has ever construed the liability of the surety as contended for by the appellee, when the bond was similar in character to the bond in this

case. *Engler vs. People's Ins. Co.*, 46 *Md.*, 331; *Straw-bridge vs. Balto. & Ohio. R. R. Co.*, 14 *Md.*, 360; *Roches-ter City Bank vs. Elwood*, 21 *N. Y.*, 88; *Barrington vs. Bank of Washington*, 14 *Serg. & Rawle*, 405; *Minor vs. Mechanics Bank*, 1 *Peters*, 41; *Magee vs. Manhattan L. Ins. Co.*, 92 *U. S.*, 93; *Rollstone Nat. Bank vs. Carleton*, 136 *Mass.*, 227; *Nat. Mech. Banking Asso. vs. Conkling*, 90 *New York*, 116; *Manufacturers' Bank vs. Dickerson*, 12 *Vroom*, 453; *Baylies on Sureties*, 145; *Borough of Berwick vs. Oswald*, 72 *Eng. C. L.*, 295; *Melville vs. Doidge*, 6 *Com. Bench*, (60 *Eng. Com. L.*,) 448; *Frank vs. Edwards*, 8 *Exch.*, 214; *Metcalf vs. Bruin*, 12 *East*, 407.

*Edward N. Rich*, and *Bernard Carter*, for the appellee.

This Court in *Strawbridge vs. Balto. and Ohio R R. Co.*, 14 *Md.*, 366, 367, in the case of a bond given to secure the faithful discharge of the duties of the freight agent of the company at Ellicott City, says: "It is well settled that the liability of a surety is not to be extended by implication beyond the terms of his contract." See also *Miller vs. Stewart*, 9 *Wheat.*, 704.

"It is equally well settled that any dealings with the principal debtor, by the creditor, which amount to a departure from the contract by which a surety is to be bound, and which by *possibility* might materially vary or enlarge the latter's liability, without his assent, discharges the surety." "In construing this bond, regard must be had to the intention of the parties when it was executed." *Metcalf vs. Bruin*, 12 *East*, 408.

If, after a bond is given, the bank imposes new functions not within the proper duties attached to the office or position in reference to which the bond was given, as these duties were understood when the bond was given, this would discharge the sureties; and so if the principal is elected to a new and different office or position, the sureties would not be responsible for the discharge of the duties of said

office. *Man. Nat. Bank of Newark vs. Dickerson,* 12 *Vroom,* 448; *Rollstone Nat. Bank vs. Carleton,* 136 *Mass.,* 226; *North-Western Bank of Minneapolis vs. Keen and Price,* 8 *Weekly Notes of Cases Pa.,* 283; *Nat. Mechanics' Banking Asso. vs. Conkling,* 90 *New York,* 116; *Brandt on Suretyship,* sec. 469; *Anderson vs. Thornton,* 3 *Queen's Bench, N. S.,* 271; *Bonar vs. Macdonald,* 3 *House of Lords,* 226.

" The rule that parol or extrinsic evidence will never be permitted to contradict or vary the terms of a contract, is certainly a cardinal one, resting on the fundamental principle that the law will not allow a contract to be made for parties different from that which they have made for themselves; but it is equally a certain and indisputable rule that such evidence is admissible to *ascertain* and *make certain* the parties and subject-matter of an agreement, to apply the contract to its subject, to prove any collateral dependent fact, about which the written agreement is silent, to remove what are termed (and often inaccurately termed) latent ambiguities. When a question arises as to the general intention of the parties, concerning which the instrument is not decisive, it has been held that proof of independent facts collateral to the instrument may be properly admitted." *Stockam vs. Stockam,* 32 *Md.,* 196, 207; *Balto. & Ohio R. R. Co. vs. Brydon,* 65 *Md.,* 216; *Fryer vs. Patrick,* 42 *Md.,* 51.

To determine the extent of the obligation of the surety, there must of necessity be an ascertainment of the *exact appointment* which was in fact made, and this we have seen to have been that of assistant book-keeper, and nothing else.

ALVEY, C. J., delivered the opinion of the Court.

This action was brought upon a bond by the appellant against John D. Lisle and the appellee, the latter being surety; Lisle, the principal in the bond, having absconded, was returned "not summoned."

The bond bears date the 13th of August, 1867, and was given by Lisle upon his appointment by the appellant to the position of assistant book-keeper in its banking house. The bond recites, that "whereas the above bound John D. Lisle *hath been* duly appointed *a clerk* of the said First National Bank of Baltimore;" therefore the condition of the obligation is such, " that if the said John D. Lisle, for and during the time he shall continue in employment in the said First National Bank of Baltimore, shall faithfully and honestly perform all the duties and services in the said First National Bank of Baltimore, which shall, from time to time, be required of him by the Board of Directors of said bank, or the president or cashier thereof, or by or under their authority, and faithfully and honestly fulfil all the trusts that shall be by them, or by or under their authority, *in him reposed, in his said appointment of clerk* of the said First National Bank of Baltimore, then this obligation to be void, otherwise to be and remain in full force and virtue." The bond was duly accepted and approved by the Board of Directors, as the "bond of John D. Lisle *as clerk.*"

The appellee pleaded general performance of the condition of the bond, and that plea was simply, in an informal way, traversed by the appellant, and thus an issue was formed, upon which the case was tried.

The proof in the case shows that Lisle remained in the employ of the bank from a time prior to the date of the bond in August, 1867, to the 27th of January, 1887; and that during that time his clerical position, and the amount of his salary, were repeatedly changed. His duties and functions were not only multiplied and enlarged, but his responsibility, and his facility for peculation, were greatly increased. From being an assistant book-keeper at the time the bond was given and accepted, he was, in June, 1870, appointed to the position of deposit book-keeper; and in November, 1871, he was made discount and foreign

collection clerk. This latter position he held until January, 1872, when he was placed in the position of note teller and discount clerk, which position he held down to the time of his leaving the bank. The duties of his position of note teller and discount clerk required him to keep separate, and collect as they fell due, all the notes discounted by the bank, and to collect all checks and drafts coming to the bank for collection; and the money thus received by him it was his duty to account for and pay over to the receiving teller at the end of each day, or at the beginning of the next day. These duties and functions pertained to the position assigned to Lisle, and held by him, from January, 1872, to the time of his absconding; and all the large defalcation, amounting in the aggregate to near about $90,000, was committed by him during the time that he held the position of note teller and discount clerk. As assistant book-keeper, the position held by him at the time the bond was given, it was no part of his duty to receive or pay out any of the moneys of the bank; and it was in proof that the appellee was informed by Lisle at the time the bond was given, that he, Lisle, was appointed to the position of assistant book-keeper in the bank.

Upon all the evidence the appellant asked the Court to instruct the jury, that if they should find that Lisle, from the delivery of the bond to the time of his leaving the bank, acted *as clerk* in the bank, and that while so acting he received sums of money belonging to the bank which he fraudulently retained, the appellant was entitled to recover. This prayer was rejected by the Court, and we think rightly so. It proceeds upon the theory that as long as Lisle continued to hold a clerical position in the bank, the terms of the condition of the bond applied to him, and operated as a security for the faithful discharge of his duties, and is therefore liable for his defalcations, notwithstanding any radical change made in his position in the bank, and in the nature and character of the duties re-

quired of him in his changed position, after the bond was given. This would certainly be a very severe construction of the bond; and to justify it the bond should contain very plain and imperative terms, such as we do not find it to contain. The bond should receive a reasonable construction, made in view of the facts under which it was executed; and therefore the construction adopted by the Court below would seem to be proper, under all the circumstances of the case. By the instruction given, at the instance of the appellee, the jury were directed, that if they should find that when the bond was given Lisle was but an assistant book-keeper in the bank ; that in 1872 he was taken from the position he then occupied and was given the position of note teller and discount clerk, and never after such appointment occupied the position of assistant book-keeper, or individual book-keeper; and that the duties and responsibilities of said position of note teller and discount clerk were materially different from the duties of the position of assistant book-keeper, and from those of individual book-keeper; and that while occupying the position of note teller and discount clerk Lisle appropriated to his own use the money of the bank, and was enabled to do so because of the opportunity afforded to him in the handling of the moneys of the bank, in the course of the discharge of the duties of his position of note teller and discount clerk ; and that no opportunity would have been afforded him to appropriate such money in his position as assistant, or as individual book-keeper ; then the appellant could not recover. In our judgment, this instruction placed the case fairly before the jury ; and as they are presumed to have found their verdict in accordance with the instruction, there is nothing in the case of which the appellant can complain.

It is one of the well established principles of law, that the obligation of a surety is not to be extended beyond what the terms of the contract fairly import. A surety has a

right to stand upon the very terms of his contract, and if he does not assent to any variation of it, and a variation is made, such variation operates a release of the surety. In the case of a surety standing bound for the fidelity or capacity of a principal appointed to a particular office or employment, if the nature of the employment is so changed by the act of the employer that the risk of the surety is materially altered from what was contemplated by the parties at the time of entering into the bond, the surety has a right to say, that his obligation does not extend to such altered state of things. This is a doctrine in regard to which the authorities all agree. *Miller vs. Stewart,* 9 *Wheat.,* 680; *Pybus vs. Gibbs,* 6 *Ell. & B.,* 902; *Manufacturers Nat. Bk. vs. Dickerson,* 12 *Vroom,* 448; *Mumford vs. Memphis & C. R. Co.,* 2 *Lea,* (*Tenn.*), 393. And it is a principle of universal application, that, in order to arrive at the intention of the parties, the contract itself must be read in the light of the circumstances under which it was entered into. General or indefinite terms employed in the contract may be thus explained or restricted in their meaning and application; and the contract must be so construed as to give it such effect, and none other, as the parties intended at the time it was made. These principles are elementary; and applying them to the terms of the bond, when those terms are considered in reference to the facts of the case, there would seem to be no doubt of the correctness of the ruling of the Court below.

As we have said, regard must be had to the intention of the parties when the bond was executed; and whatever facts will shed light upon the question of intention may be considered in construing the bond. *Mumford vs. Memphis & C. R. Co., supra.* Hence we may look to the position held in the bank by Lisle at the time the bond was given. He had been appointed assistant book-keeper, and it was with reference to that appointment that the bond was given to and accepted by the bank. The bond recites the fact

that Lisle *had been* appointed *a clerk* in the bank, and the extrinsic facts identify the clerkship as that of assistant book-keeper. That position, however, had not at the time of the bond given, and has never had, any of the duties and functions pertaining to it that pertain to the position of note teller and discount clerk, to which Lisle was subsequently appointed. This latter position was one entirely different from that of book-keeper, and was of great responsibility, and, from its very nature, was of much greater risk and peril to the surety than the former position held by Lisle. It is true the terms of the condition of the bond are very large and comprehensive, but they all have reference to the previous appointment as clerk. By the terms of the bond it was certainly competent to the board of directors, or to the president or cashier, to impose additional consistent duties upon Lisle to those then pertaining to the position of book-keeper, but not to impose duties upon him that would entirely change the nature and grade of his position in the bank, and enhance his responsibility, and thereby essentially increase the risk to the surety on his bond. This could only be done by the assent of the surety, and it is not pretended that such assent was ever obtained. And this is strictly in accordance with the principle maintained by this Court, in the case of *Strawbridge vs. Balto. & Ohio R. R. Co.*, 14 *Md.*, 360. In that case it was held that the surety was not exonerated; but it was so held because it was found that the *nature* of the agent's *duties* was not *changed*, and no *new or different duty* was imposed upon him by the alteration in the regulations of the company at the particular station. Indeed, it was conceded by the Court, that if the employment and duties of the agent had been essentially changed, the surety would not have been liable; and no well considered case has been cited that gives sanction to a different principle.

It follows from what we have said that the judgment below must be affirmed.

*Judgment affirmed.*

(Decided 14th March, 1888.)