ILIFF V. THE WESTERN-SOUTHERN LIFE INSURANCE COMPANY.

1. CONSTRUING THE LIABILITY OF A SURETY.

The liability of a surety is always *strictissimi juris*, and may not be extended by construction beyond his specific engagement.

2. EXECUTION OF A FIDELITY BOND.

Where a surety signs a bond given for the fidelity of the principal's agent while engaged in certain employment which is set forth in the bond: *Held*, that an appointment of the agent to a wholly different position, with increased responsibilities, and under an entirely different contract, the surety does not remain liable for default under the new contract and arrangement.

Error to the Court of Common Pleas of Hamilton County.

SMITH, J.

This action was brought by the Insurance Company against Osborn & Iliff. The petition alleged that on March 23, 1888, Osborn as principal and Iliff as surety, duly executed to the plaintiff their bond, a copy of which was set out, and alleged a breach of the conditions thereof, and that Osborn had failed to account for $161.62 received by him for the

company between September 30 and October 9, 1893, and asked for a judgment for $100, the penalty of the bond.

The defendant, Iliff, filed an answer and an amended answer to the petition. By the amended answer he set up as a fifth defense, in substance as follows: That long before the date of October 9, 1893, when the shortage in Osborn's account had occurred, the defendant Iliff had been released from liability on said bond by the act of the plaintiff in this way: That when the bond was executed by him as surety for Osborn, the latter was employed by the said company as a soliciting agent for said company under a contract, the sixth condition of which is set forth in the bond attached to the petition. That under said contract the duties of Osborn were simple, and his responsibilities small. But that after the signing of said bond in 1889, and long before the breach complained of in 1893, the said plaintiff, without the knowledge or consent of the defendant, entered into a new contract with Osborn placing him in a more responsible position, removing him out of the state of Ohio, and making him superintendent of a branch office, when instead of being a mere solicitor for insurance, making his report each week to the plaintiff, he was placed in the control of a large number of soliciting agents, where his duties became of a much more responsible nature, and his liabilities to the plaintiff were greatly enlarged.

The bond in its essential features was as follows: After stating that the makers were bound to the company in the sum of $100, it proceeds thus:

"Whereas the above named company has appointed the party first named above as its agent, under an agreement of which the following is the sixth condition: That the total amount of weekly premiums in the life policy register, after deducting the total weekly premiums in the lapsed policy register, are to be credited to my account on Monday of each and every week; the balance shall be considered as having been absolutely received by me on behalf of the company, and the said company shall not be bound to prove that I have received the premiums from each particular policy holder; and the said agent owes various other duties to said company under his agreement. Now, the condition of this obligation is such, that if the party first named above shall in all respects well and truly serve the company as such agent during his continuance in office, and during his employment by the said company in whatever capacity in which he may be engaged, the duties and emoluments of which may be changed from time to time by the company without notice to the sureties, and shall duly and properly account for and pay over to the company all moneys which under the sixth condition aforesaid he is held to have received for the company, and shall duly and properly account for and pay over all other sums of money or property which may come into his possession belonging to said company, and shall upon the termination of his agency, from whatever cause, deliver to the said company all the money, books, accounts, papers and other property which shall be in his hands belonging to the said company, or connected with, or growing out of said agency, to such person or persons as the said company shall order and direct, then this obligation shall be void; otherwise to remain in full force."

The question then that arises is, whether the demurrer to this answer was properly sustained by the court. After consideration, we have reached the conclusion that it was not, and that the answer set up facts which constituted a defence to the action. We are aware that there is language in this bond which gives color to the idea that the obligators

Iliff v. Insurance Company.

bound themselves to respond to any demand which the company might have against the principal therein, arising not only out of his dealings with the company in the agency established by the original contract between him and the company, viz: while he was acting as a mere collecting or soliciting agent here in Cincinnati, but also in any other position in which he might be placed, and though the duties and responsibilities should be greatly changed.

But we think this interpretation should not be put upon it. To use the laguage of the authorities, "the liability of a surety is always *strictissimi juris*, and may not be extended by construction beyond his specific engagement." In this case the appointment of agent was indeed a specific contract, and he was a mere collector of weekly payments, for which he was to settle every Monday as the part of the contract recited in the bond shows. By the terms of the bond he was to serve the company as such agent during his continuance in office, and on its termination turn over all money, etc., in his hands belonging to the company or growing out of such agency; and though the surety might have been liable for a default of the principal occuring while in the position he was appointed to fill, even if the money which he did not pay over was received by him while discharging other duties imposed upon him, in addition to those first discharged by him, yet the authorities seem clear that if a radically different arrangement was made, as is conceded by the demurrer to have been made here, an appointment to a wholly different position, with increased responsibilities, and under an entirely different contract, the surety does not remain liable for default under the new contract andarrangement. It would be unjust to him if he were so held, and the leaning of the court should be against such a construction of the contract, if there is room for a different construction, as we think there is here. The cases in 90 N. Y. 116 and 68 Md. 449 are very similar to the case at bar, and fully sustain and confirm the views we have expressed.

The same question arises in other ways in this case, but as the judgment will have to be reversed for error in sustaining the demurrer to the answer, it is not necessary to refer to them. The judgment will be reversed and remanded.

*Keam & Keam*, for Plaintiff in Error.
*W. H. Jones*, for Defendant in Error.