# Henry Rieman and Jesse T. Peters, *against* James Peters and wife.

This case is to decide the construction of the will of George Peters, and whether the trustees therein named are entitled to the possession of the property, immediately after executors are required by law to settle up the estate.

The important provisions of the will are in these words: " In consideration of the regard and affection I have for my said wife, Sally Peters, and in lieu of any right of dower, or thirds, or any other interest she may have, as my widow, in any other estate, I do hereby give and bequeath to her during the term of her natural life, if she so long remains my widow, but not otherwise, in addition to the property so conveyed in trust, the sum of $500 per annum, to be paid out of my estate, in equal monthly payments, from the time of my decease."   Another clause declares, that, if necessary, the whole residue of his estate shall be answerable for that provision during her life; and a third clause provides, that during the life of his wife,

all his property shall be preserved and kept together by my executors hereinafter appointed; and further, his sons shall, under the direction and supervision of my executors, have the charge of and attend to the renting, repairing and collecting the rents of my houses, and receive a commission of five per cent.; and afterwards makes a final disposition.

The trustee's power over the estate only commence after the executors have discharged their duties. The executors are to keep the estate together till the widow's death. This is not forbidden by our testamentary law of 1798.

THIS is an appeal from an order or decree of the orphans court of Baltimore county, in which the appellees were the petitioners, and the decree being in their favor, an appeal was taken by the defendants therein.

The petition was filed on the 15th October 1851, and alleged, that letters testamentary were granted to the appellants, as executors of George Peters, on 28th March 1850; that the debts of the deceased had been discharged, and the time which the law prescribed for the final settlement of the estate of the deceased had expired. That by the will, the testator devised all his property to Rieman, one of the executors, and to Launcelot Warfield, upon the trust therein set forth. That the executors had been requested to pass their final account, and hand the property over to the trustees, in compliance with the terms of the will, and had refused to comply, claiming a right to retain the assets and settle their account of receipts, &c., in said orphans court, so long as the testator's widow lived. The prayer of the petition was, that said executors be required to make a final settlement.

The answer of the executors, (filed 30th October 1851,) admitted that the debts had been paid; that they had passed their first account in April last. They insisted, that according to the plain directions and provisions of the will, no *final* settlement could be lawfully made by the executors, until after the death of the widow of the deceased; for that the will, a copy of which was exhibited by the petitioner, contained the following trust: "All the estate and effects, (subject to preceding bequests to the widow,) were conveyed to Henry Rieman and Launcelot Warfield, subject to this trust." That

during the natural life of said testator's wife, "his estate and property, of every kind, should be preserved and kept together by his executors, and that all the rents collected should be paid over to said executors, who are to pay over the entire nett income arising from the whole trust property annually, after the payment of the taxes, &c., to said trustees, who are to make distribution thereof according to the directions of said will." Therefore no sale or distribution of the estate itself, or any part thereof, can be made until after the death of the widow. The answer refers to other clauses of the will, showing what disposition is to be made of the property immediately after her death.

With this statement, it is believed that the controversy can be understood, without introducing into the report the very voluminous will.

This case was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

By *Hinkley* for the appellant, and *G. Williams* for appellee.

*Hinkley* for appellant.

Letters testamentary upon the estate were granted March 1850, and the petition, which was the commencement of this proceeding, was filed 15th April 1851. The answer admits all the debts to be paid. Are the appellees, as the trustees named in the will, entitled under the will to demand, that the estate be surrendered to them by the executors?

We contend, that the executors in this case cannot pass a *final* account, so long as there remain duties required of them by the will, or imposed upon them by the law.

In equity executors are regarded as trustees, and the will is to guide us in ascertaining their duties. 1798, ch. 101, sub ch. 8, sec 20. 1832, ch. 219, sec. 1. *Steph. Nisi Prius,* 1840, and its reference to 4 *Term Rep.,* 465. 5 *G. & J.,* 488, *Hunter vs. Bryson.*

As to his mode of proceeding, see act of 1798, ch. 101, sub chaps. 10 and 11.

This estate cannot be administered during the life of the widow, and, of course, during her life the executors cannot divest themselves of the estate.

The widow is to receive a certain sum of money, payable to her monthly, and if the rent of a particular house did not reach $400, the deficiency was to be made up to her. This charges the whole of the estate with the payment of these sums.

Nothing is to be paid over to the trustees, until the claims of the widow under the will are satisfied. Taxes, repairs, ground-rents, in addition to what the widow is to receive, must be paid before the trustees or any other person can claim.

James, the son, who is one of the petitioners, is not to receive any part of the assets. What is given for his benefit, is to be paid over quarterly to such person as shall furnish him with board, clothing, &c., and after his marriage to his wife, for her sole use. When he dies, it is to go to his children.

*Williams* for appellees.

The appellees do not design to frustrate any part of the will. They ask the court to make the appellants settle up the estate, and they do not pretend to deny that the debts are paid, and that the time allowed them by law to settle up the estate and make distribution of the balance, had expired when the petition in this case was filed.

The duty of the orphans court is to grant letters and compel the executors to perform their duties, return an inventory, &c., and at the end of the time fixed by law to settle a final account, unless they make an affidavit, which will entitle them to further time for passing the final account.

The jurisdiction of the orphans court is statutory, and they have no authority, except that which is given to them.

3 *H. & J.*, 239. 6 *H. & J.*, 166. After the time expires, the law presumes the estate to be settled up.

Mason, J., delivered the opinion of the court.

The appellees, Peters and wife, filed their petition in the orphans court of Baltimore county, alleging that letters testamentary had been granted to the appellants, as executors of George Peters, deceased, on the 28th day of March 1850, that the debts of the deceased had been paid, and that the time prescribed by law for the final settlement of the estate of the deceased, had passed, and concluded by praying "that said executors might be required to make such final settlement accordingly." This petition was filed on the 15th of October 1851.

In reply to said petition, the executors filed their answer, in which they admit, that all the debts had been paid, except current expenses, incident upon the management of the estate; that they had already rendered their first account, and that according to the plain directions and provisions of the will, no *final* settlement could be lawfully made by the executors, until after the death of Mrs. Peters, the widow of the deceased. The executors also set out at length, the will of George Peters, out of which, grows the present controversy. The orphans court of Baltimore, granted the prayer of the petitioners.

There appears to be no difficulty in arriving at the intention of the testator, as indicated by the language of his will, and that intention must be effectuated, unless it should be in contravention of some established law. Under this extraordinary, and somewhat anomalous testamentary instrument, three distinct classes of representatives are appointed by the testator. In the first place, Henry Rieman and Launcelot Warfield, are named as *trustees*, for the purpose of accomplishing certain trusts, imposed upon them. Secondly, George and James Peters are appointed *agents*, and as such, have distinct and independent duties assigned them; and in the third place, the appellants, Henry Reiman and Jesse T. Peters, are appointed *executors*. Whether the functions of these last named, in the capacity of executors, are to continue after the time shall have expired, within which they would be required by

law, in ordinary cases, to render their final account, and sur-render their office, is the question to which the attention of this court is especially invited.

The parts of the will particularly relating to the subject matter of the present controversy, are in these words, viz: " In consideration of the regard and affection I have for my said wife, Sally Peters, and in lieu of any right of dower, or thirds, or any other interest she may have as my widow, in any other estate, I do hereby give and bequeath to her, during the term of her natural life, if she so long remains my widow, but not otherwise, in addition to the property so con-veyed in trust, the sum of five hundred dollars per annum, to be paid out of my estate, in equal monthly payments, from the time of my decease." And in another clause it is pro-vided, that "if, from any unforeseen circumstance or casuality, it becomes necessary, the whole residue of my estate, or the income thereof, or so much, or such part as may be requisite, shall be bound for and held answerable to make good that provision, during the lifetime of my said wife." And the better to accomplish his last mentioned purpose, it is ex-pressly directed by the testator, "that during the natural life of my said wife, my estate and property of every kind, subject to the said preceding devises, shall be preserved and *kept together by my executors,* hereinafter appointed;" and again, the will proceeds, " my sons, George Peters and James Peters, shall, under the *direction and supervision of my executors,* have the charge of, and attend to the renting, repairing and collecting the rents of my houses, &c. And for the rents so collected, and paid over by them *to my executors,* they shall be entitled to, and receive a commission of five per cent." And then again, the testator proceeds to direct the ultimate disposition of his estate, in these words : " The entire *income* arising from the whole trust property, and premises aforesaid, annually, after the payment of taxes, repairs, ground-rents and other incidental expenses, *and making the provision here-inbefore contemplated for my said wife,* shall be paid over to, or received by my said trustees, in order that one equal

seventh part, or share of such *income*, shall be paid over annually, to each of my four children." The will then pro-ceeds to declare the trusts upon which the estate is to be held by the trustees, after it shall thus have come into their hands. Finally, the appellants are appointed executors by the testator.

As has been before intimated, there is no difficulty in ascertaining the intention of the testator, in regard to the duration of the powers of the executors. By express terms, they are to keep the *estate together*, *till after the widow's death*, for the purpose of being able to pay over to her, the annual allowance appropriated to her in the will. These acts are to be performed by them in the *capacity of executors*. The trustees' powers over the estate, only commence, after the executors shall have discharged their duties, in respect to the proceeds of the estate, which shall first pass through their hands, and after the residue shall have been handed over to said trustees.

But it is contended, that this manifest intention of the testator shall not prevail, because it controvenes a provision of our testamentary laws. By the act of 1798, chap. 101, sub chap. 8, sec. 1, it is provided, that every executor or administrator shall, within fifteen months (under peculiar circumstances, the time may be extended to eighteen months,) after the date of their letters, return *a full account* of their administration; and it is argued by the appellees' counsel, that the clear import of this language is, to require the appellants in the present case, to render *a final account*, and to surrender their office and powers as executors. We will not pause to consider, whether this provision of our testamentary law is susceptible of such a construction or not, which is, at least, a doubtful question, but will proceed to show, if it were so to be construed, that by a subsequent clause in the same act, (which seems entirely to have escaped the notice of counsel,) it is modified and controlled. Sub chap. 10, sec. 11 of this law, provides, that "if, by the provisions of any will, it shall be necessary for an executor, to retain in his hands the personal

estate, or a part thereof, after all just claims are discharged, as where money, or some other thing is directed to be paid at a distant period, or upon a contingency, the court of chancery, or the orphans court, shall have power, on the application of such executor, or of a party interested, to decree, or give directions relative thereto." The case before us comes within the operation of this section.

The petition before us merely prays, that the executors might be required to render a *full account*, but asks for nothing more. In this form we are not prepared to say, that the prayer should not have been granted, under the general powers of the orphans court to supervise the administration of a testator's estate. A *full account* may be rendered, and still it may not be a *final account*, so as to terminate the official existence of the executor. We are relieved, however, from expressing any opinion on this point, by the concessions of counsel on both sides. It is admitted, that the application in the present case, is for an absolute termination of the powers of the executors, and for a transfer of all assets in their hands, over to the trustees. Such a prayer, we are not prepared to grant.

*Order reversed and petition dismissed.*