CONRAD GUNTHER and IRA C. CANFIELD *vs.* THE
STATE, use of RANDOLPH J. BOULDIN, Guardian, &c.

*Orphans' Court—Liability of Sureties in a Guardian's
Bond—Construction of the Code, Art. 93, sec. 10—
Guardian and Ward—Waiver of error in an Order
directing Guardian to pay over Money in his hands,
by his antecedent confession of his Liability, to Pay—
Right of Appeal by Sureties in a Guardian's Bond.*

The sureties in a guardian's bond are not responsible for any property
their principal may have received as guardian without competent legal
authority, and to which the ward had no legal title or claim during
his minority.

A testator bequeathed the sum of $2,000 to an infant, to be paid to him
in case he attained the age of twenty-one years. HELD:

1st. That under the 10th section of the 93d Article of the Code of Public
General Laws it was competent for the Orphans' Court to appoint a
guardian for the infant, require the guardian to give bond, and then
direct the administrator to pay the money over to the guardian, to be
by him kept and preserved upon the responsibility of his bond, and
paid to the ward, if he attains majority, and if not, then to the parties
entitled thereto, under the will, or by law.

2d. That the guardian so appointed is as much an officer of the Court as
the administrator, and equally subject to its authority, and the funds
in his hands are at all times equally subject to the order and control
of the Court as if they had been suffered to remain in the hands of the
administrator.

3d. An order requiring the administrator to pay over the money to the
guardian, must certainly protect the administrator, the Court having
undoubted jurisdiction to direct what he should do with the money.

4th. That as the guardian lawfully receives the money under such or-
der, it follows, the sureties on his bond are responsible for the faithful
discharge of his duty in keeping it.

5th. That such order is not an adjudication construing the will and de-
termining the legatee was entitled to receive the legacy before he at-
tained the age of twenty-one.

Gunther and Canfield *vs.* The State, use of Bouldin.

The guardianship of a minor having been revoked by the Orphans' Court, and a new guardian appointed, the latter filed his petition to compel the late guardian to account and to pass over to him the money and property in his hands as late guardian. The latter answered this petition, stating, among other things, that he had become a bankrupt, and was entirely without means and utterly unable to bring into Court or pay over to the new guardian, any portion of the money received by him as guardian. And on the same day he filed an account in the Orphans' Court, showing a balance due by him to the ward. The Orphans' Court ordered the said account to be proved, and passed an order requiring the late guardian to pass over to the new guardian, all moneys, &c., which might have come to his hands as guardian, and particularly the balance shown by his account, and in default thereof, that the new guardian put in suit the bond of said late guardian. On appeal from this order by the sureties in the late guardian's bond. HELD:

1st. That an error in the order in not fixing a reasonable time for the former guardian to pay over the money to the new guardian, was waived by the antecedent confession of the guardian that he was insolvent and unable to pay the money.

2d. That the sureties had an interest in preventing the passage of the order, and in virtue of such interest were entitled to appeal.

APPEAL from the Orphans' Court of Baltimore City.

John Watchman's will, dated 5th July, 1856, and admitted to probate October 12th, 1865, appointed his wife executrix; she renounced, and letters of administration c. t. a. were granted to James K. Wilkes.

The will contained the following clause:

"I give and bequeath to my adopted son, Robert Siggs, sometimes called John Watchman, two thousand dollars, should he attain the age of twenty-one years." The next clause contained a similar legacy to another. Both of these legacies were made charges on his estate; and should the legatees die before attaining the age of twenty-one years, the legacies were to lapse on their death respectively. The residue was devised and bequeathed to his wife for life, with power to dispose of the same at her pleasure, and if not so disposed of, over to the first named legatees, if they or either of them should survive the wife.

On the 4th of February, 1867, the Orphans' Court of Baltimore City, appointed George H. Steibel, guardian to Robert Siggs, sometimes called John Watchman, and on the same day Steibel gave bond, with the appellants Gunther and Canfield, as his sureties.

On the same day, the Orphans' Court passed an order; on the application of James K. Wilkes, administrator, with the will annexed, of John Watchman, deceased, "that the said administrator, c. t. a. be and he is hereby authorized and empowered to transfer to George H. Steibel, guardian of Robert Siggs, sometimes called John Watchman, the legacy of two thousand dollars, bequeathed to the *said* ward, in the will of said deceased." On the 16th of March, 1867, the administrator passed his first and final account. On the 7th of July, 1868, after citation at the instance of the sureties, which was not responded to by Steibel, the Orphans' Court passed an order revoking Steibel's guardianship, and appointing Randolph J. Bouldin guardian in his stead.

On the 20th of November, 1868, Bouldin as guardian, filed a petition against Steibel, for an account and order to deliver over "all the property of the said Robert Siggs, &c., remaining in his hands, &c." Steibel answered this petition, showing his receipt from Wilkes the administrator, of $2,000, and stating that he had used the balance of said sum in his hands, after deducting certain allowances claimed by him, in his business, and being unfortunate, he was, on April 14th, 1868, compelled to apply for the benefit of the bankrupt law, and all the property of Steibel, including the goods bought with the said money of Siggs, passed into the hands of Ira C. Canfield, as assignee of Steibel; that Canfield is one of the sureties on Steibel's bond, as guardian; and that Steibel is now entirely without means and utterly unable to bring into the Orphans' Court or pay over to Bouldin, as the present guardian of Siggs, any part or portion of the money received by Steibel, as such

guardian.  On the same day Steibel exhibited his first account, showing a balance due his ward of $1,925.62.

On the 28th of November, 1868, the sureties filed an exception to the account for the reasons: 1st.  That Siggs, alias Watchman, had no property whatever in the interest or principal of the said legacy, which could legally come into the hands of Steibel as guardian.  2d.  That at the time of Steibel's appointment as guardian, Siggs had no property of any kind which could legally come into the hands of Steibel as guardian, and that consequently the appointment was void for want of jurisdiction in the Orphans' Court.  3d.  That the alleged payment by the administrator was illegally made.

On the 11th of December, 1868, the Orphans' Court overruled the exceptions, and passed an order approving Steibel's account, and requiring him as guardian, to pay over all property, &c. to Bouldin, and in default, directing Bouldin to put in suit, the bond of Steibel as guardian, &c.  From these orders the sureties appealed.

The cause was argued before BARTOL, C. J., STEWART, MILLER and ALVEY, J.

*Isaac D. Jones (Attorney-General)*, for the appellants:

To have given jurisdiction to the Orphans' Court to appoint a guardian to Robert Siggs, it was necessary that the Court should have at least *primâ facie* evidence that he was entitled to some property, which could be the subject of a guardianship.  *Code of Public General Laws, Art. 93, secs. 144, 203.*  The power is analogous to that of granting administration, and administration d. b. n. *Shivers vs. Wilson*, 5 *H. & J.*, 130; *Grimes et al. vs. Talbert et al.*, 14 *Md.*, 169; *Scott vs. Fox*, 14 *Md.*, 388.

It is apparent from the order of appointment describing the ward as "an adopted son under the will of John Watchman, deceased," and also, the order on the adminis-

trator, passed on the same day, to pay over to Steibel, guardian, &c., " the legacy of $2,000, bequeathed to the said ward in the will of deceased," and also from the administrator's account, and the account of Steibel approved by the Court, that there was no pretense that the ward had any property whatever, unless he was entitled to that legacy. And if the Court had looked at the will, they must have seen that so far from affording *primâ facie* evidence of title in Siggs, the will plainly conferred no interest which could be the subject of guardianship, the legacy not vesting, unless and until he should arrive at .twenty-one years of age, when, of course, no guardian could be legally appointed.

Thus presenting the case of special, limited jurisdiction, showing a want of jurisdiction upon the face of their proceedings. *Shivers vs. Wilson,* 5 *H. & J.,* 130 ; *Stewart vs. Pattison's Exr.,* 8 *Gill,* 58 ; *Mayor, &c. of Baltimore vs. Porter,* 18 *Md.,* 284 ; *Offut's Admr. vs. Offutt,* 2 *H. & G.,* 178 ; *Hayden vs. Burch,* 9 *Gill,* 82 ; *Townshend vs. Brooke,* 9 *Gill,* 91 ; *Glass vs. Ramsey,* 9 *Gill,* 458 ; *Spencer vs. Ragan,* 9 *Gill,* 482 ; *Williams vs. Holmes,* 9 *Md.,* 281 ; *Clark & Jackson vs. Bryan & Lunt,* 16 *Md.,* 171.

The alleged ward had no interest in the legacy, which could be the subject of guardianship during his minority, according to the terms of the will, therefore, the order of the Orphans' Court, directing the administrator to pay over the legacy to Steibel was without jurisdiction, and, therefore, null and void. *McMath vs. The State,* 6 *H. & J.,* 98 ; *Townshend vs. Brooke,* 9 *Gill,* 91.

Where a Court, with limited jurisdiction, takes upon itself to exercise a jurisdiction which does not belong to it, its decision amounts to nothing, and does not create a necessity for an appeal. *Mayor, &c. of Baltimore vs. Porter,* 18 *Md.,* 285 ; 8 *Howard,* 543.

The Orphans' Court had no jurisdiction to decide on the

validity of the legacy, and no jurisdiction, save what was necessarily conferred by statute. *State, use of Trustees of M. E. Church vs. Warren, et al.*, 28 *Md.*, 338.

By section 10 of Article 93, of the Code of Public General Laws, the Orphans' Court had power " to decree or give directions in regard to the legacy, and in what manner it should be disposed of," so that it " should be secured to the person to be entitled at a future period or contingency," and be " prevented from lying dead or being unproductive," and what part of the estate should be retained or appropriated for that purpose, &c., and this could be legally done only by an order to retain in the administrator's hands, or invest the same to abide the contingencies of the will, and so that the residuary legatee should, in the meantime, have the accruing interest. It is a power to carry the will into practical effect, not a power to alter or change its plain import and meaning.

But if the appointment of Steibel was valid, the appellants being sureties in the guardian-bond of Steibel, and, therefore, bound only for his accounting for, " and management of *the property and estate* of the infant under his care," had a right to object to the Court's approval of a proposed account in which the guardian confessed himself insolvent, and erroneously sought to charge himself, as guardian, with money he could not legally have received in that capacity, because the approval of such account created a *primâ facie* liability of the sureties for the money in a suit upon the bond. The Orphans' Court, therefore, erred in the passage of the order approving the pretended guardian's account. A contract of surety cannot be extended by construction beyond its letter. *Ellicot vs. Levy Court*, 1 *H. & J.*, 360; *Quynn vs. State*, 1 *H. & J.*, 36; *Kerr vs. State*, 3 *H. & J.*, 560; *Chase vs. McDonald & Ridgely*, 7 *H. & J.*, 160; *Morgan vs. Blackiston*, 5 *H. & J.*, 61.

The order of the Orphans' Court of the 11th of December, 1868, requiring Steibel to pay over to Bouldin, &c.,

was erroneous also, because no "reasonable time was fixed by the Court" within which payment over was to be made before the bond was to be put in suit. *Code of Public General Laws, Art.* 93, *secs.* 187, 189.

The appellants, as sureties, have such an interest in the subjects of said orders as authorizes them to maintain this appeal. *Stevenson vs. Schriver,* 9 *G. & J.,* 335 ; *Parker vs. Gwynn,* 4 *Md.,* 423 ; *Hoffar vs. Stonestreet,* 6 *Md.,* 303 ; *Cecil vs. Harrington,* 18 *Md.,* 510 ; *Cecil vs. Cecil,* 19 *Md.,* 72.

*Randolph J. Bouldin* and *Albert Ritchie,* for the appellee.

Robert Siggs being a male under twenty-one years of age, and entitled to a legacy or bequest of $2,000 under the last will and testament of John Watchman, deceased, and not having a guardian appointed by last will and testament, agreeably to law, the Orphans' Court of Baltimore City had the power, and did appoint George H. Steibel the guardian of said Siggs ; the appointment was perfectly legal and in accordance with the last clause of *Art.* 93, *sec.* 144 *of the Code of Public General Laws.*

The Orphans' Court had "full power to take probate of the will" of John Watchman, deceased, "*direct the conduct and settling of the accounts of*" James K. Wilkes, "the administrator c. t. a." of said Watchman, "*superintend the distribution of the estate of said testator,*" "secure *the rights of the orphan,*" Robert Siggs, "*and to administer justice in all matters relative to the affairs of* said deceased," John Watchman. *Code of Public General Laws, Art.* 93, *sec.* 230 ; *Crauford's Adm'r et al. vs. Crauford et al.,* 22 *Md.,* 466.

Wilkes, as administrator c. t. a. was not bound in any manner to discharge and fulfil the duties of guardian after Steibel was appointed guardian. *Code of Public General Laws, Art.* 93, *sec.* 152.

The Orphans' Court had full power to make Steibel account for the $2,000 received by him as guardian, even

although Siggs might have had no property in either the interest or principal of the same during his minority.

The Orphans' Court had full power and authority, and did rightfully pass the order of December the 11th, 1868, ordering Steibel to deliver up to Bouldin all the property of Siggs, and especially the sum of $1,925.62, which appeared to be due by Steibel's account. *Code of Public General Laws, Art.* 93, *secs.*, 187, 188, 189, 237 *and* 242.

The order of the Orphans' Court requiring Steibel to pay over to Bouldin, as guardian, the property of Siggs, and the legacy of $2,000, and in default to put Steibel's bond in suit, and the order of the Court requiring Steibel to prove his guardian's account, did not, nor did either of said orders have any *direct* tendency to operate injuriously upon the interests of Canfield and Gunther, or either of them; and Canfield and Gunther have not, nor have either of them, any standing in Court, and were not injured by either of said orders; and their appeal should be dismissed. *Stevenson vs. Schriver,* 9 *G. &. J.,* 324 ; *Compton vs. Barnes,* 4 *Gill,* 57 ; *Parker vs. Gwynn,* 4 *Md.,* 426 ; *Cecil vs. Harrington,* 18 *Md.,* 512 ; *Cecil vs. Cecil,* 19 *Md.,* 72.

MILLER, J., delivered the opinion of the Court.

The Orphans' Courts of the State have unquestioned jurisdiction to appoint guardians to minors, and when they have in any instance exercised this power, and the guardian has given bond, it does not lie in his mouth or in the mouths of his sureties to deny that he is guardian, or to aver the ward had no property subject to guardianship, even if the having of property be essential to the validity of the appointment. *Fridge vs. The State, use of Kish,* 3 *G. &. J.,* 114, is conclusive authority for this proposition. To this extent the sureties are clearly bound by the recital in the bond. But the appellants assert the further proposition that as sureties they are not responsible for any property their principal may have received as

guardian without competent legal authority, and to which the ward had no title or claim during his minority.  To the position thus broadly stated no valid objection can be made, for it is a principle too well settled to admit of question that the liability of a surety cannot be extended beyond the terms of the engagement into which he has entered.  As against him the contract cannot be carried beyond its strict letter; it cannot be extended by equitable construction or implication.  *Chase vs. McDonald & Ridgely*, 7 *H. & J.*, 193; *Strawbridge vs. Balt. & Ohio R. R. Co.*, 14 *Md.*, 366.

This presents the inquiry, was the money for which the appellants deny their responsibility lawfully placed in the hands of their principal?  And this depends upon the further question, had the Orphans' Court jurisdiction and authority to pass the order of the 4th of February, 1867, empowering the administrator c. t. a. to transfer to the guardian of the legatee the legacy of $2,000 bequeathed by Watchman's will to his adopted son, in case he attained the age of twenty-one years?  By the terms of the will the legacy was clearly contingent, and to be paid to the legatee only in the event of his attaining majority.  It was a case, therefore, in which the duty of the administrator and the authority of the Court are pointed out and prescribed by the 10th section of the 93d Article of the Code, which provides that:

"Whenever, under the provisions of a will, it shall be necessary for an executor or administrator *cum testamento annexo* to retain in his hands the personal estate, or any part thereof, or where money or some other thing is directed to be paid at a distant period or upon a contingency, any Court of Equity in the city or county, or the Orphans' Court, shall have the power, on the application of such executor or administrator, or of a party interested, to decree or give directions thereto; and it *shall be the duty* of such executor or administrator *to apply* to the said

Court of Equity or the Orphans' Court, and the said Courts respectively shall have *full power* to decree or direct what part of the personal estate shall be retained or appropriated for the purpose, *and in what manner it shall be disposed of,* and the legacy or benefit intended by the will shall be secured to the person to be entitled at a future period or contingency, and how the necessary part of the personal estate to be appropriated for the purpose shall be prevented from lying dead or being unproductive, and how it shall be applied agreeably to the intent of the will or the construction of law in case the contingency shall not take place."

No case has been cited in which this section or the corresponding provision in the Testamentary Act of 1798, has been construed, and we are aware of no instance where it has been directly brought before the Appellate Court for full construction. It was simply referred to in *Rieman vs. Peters,* 2 *Md.,* 104, as protecting a clause in a will, which directed executors to keep the estate together until after the death of the widow, for the purpose of paying her an annual allowance, from the objection that it contravened the provisions of our Testamentary Law.

It is obvious the main design of the section, and the object to be attained by the exercise in every case of the power thus conferred, is the preservation of the fund so as to secure it to those who, under the will, or by law, shall be entitled to receive it upon the arrival of the prescribed period, or the happening or nonhappening of the designated contingencies. To this end, it is made *the duty* of the executor or administrator having the money or property in hand, to apply to the Court for direction in the premises, and on such application the Court is clothed with "*full power to decree or direct in what manner it shall be disposed of,*" to effect the contemplated purpose; but the *mode* of disposition for safe keeping and security is not

prescribed, but left, in each case, to the sound discretion and judgment of the Court.

In view of this comprehensive language and the ample authority given without designation of any particular mode or manner of investing, securing, or safe keeping, we cannot perceive why, in a case like the present, where a legacy is given to an infant, but which he is not to receive, unless he attains full age, it is not competent for the Court to appoint a guardian for him, require the guardian to give bond, and then direct the administrator to pay the money over to the guardian to be, by him, kept and preserved, upon the responsibility of his bond, and paid to the ward, if he attains majority, and if not, then to the parties entitled thereto, under the will, or by law. The guardian so appointed is as much an officer of the Court as the administrator, and equally subject to its authority. The funds in his hands are, at all times, equally subject to the order and control of the Court, as if they had been suffered to remain in the hands of the administrator. *Code, Art.* 93, *sec.* 237. We have no doubt, the simpler, better, if not safer practice in all cases to which the section under consideration applies, would be to order the executor or administrator himself to retain the funds, and invest them in some safe security, to be designated by the Court, but we are not prepared to say the mode here adopted is wholly without sanction of law, and the order in question utterly void for want of jurisdiction in the Court to pass it. The Orphans' Courts are tribunals of special and limited jurisdiction, deriving their powers mostly from statutory provisions, and are inhibited from exercising, under pretext of incidental or constructive authority, any jurisdiction not expressly conferred by law, but this does not require the statutes, expressly conferring jurisdiction upon them, to receive any different or more restricted construction than other laws. By this particular provision the same authority is conferred upon the

Orphans' Courts as upon the Courts of Equity. The two tribunals are placed on the same footing, and clothed with the same powers, and the order before us must certainly protect the administrator. He was bound to apply to the Court for directions, and has done so, for aught that appears, in good faith, and in the honest discharge of his duty. The Court to which he applied had undoubted jurisdiction to direct what he should do with the money, and have passed this order in the premises, which he has obeyed. It is not the case where he administers the estate *in pais*, ascertains who are legatees or distributees, and pays at his peril, but where, by special provision, he is commanded to seek the directions of a Court, which the law has clothed with full power to direct, in what manner he shall dispose of the fund. In obeying the order so passed he was acting under the authority of a Court of competent jurisdiction, and is as fully protected as if he had sought the direction, and obeyed the order of a Court of Equity.

The order being effective to protect the administrator in paying, it cannot be said the party to whom the money was paid received it, without lawful authority. We are satisfied the guardian lawfully received the money, and it follows the sureties on his bond are responsible for the faithful discharge of his duty in keeping it.

It is to be observed we decide the order to have been passed in pursuance of the power conferred on the Orphans' Court by this 10th section, and not as an adjudication construing the will and determining the legatee was entitled to receive the legacy before he attained twenty-one. The former, as well as the newly appointed guardian, if he succeed in receiving it, held and will hold the fund, subject to the Court's order and control, under the authority conferred by this, as well as the 237th section, and in accordance and not in conflict with the provisions of the will.

It is alleged there is error in the order of the 11th of December, 1868, because it does not fix a reasonable time for the former guardian to pay over the money to the new guardian, and this is said to be in violation of the requirement of section 189, under which the order was passed. But this provision, like all others of similar character, may be waived by the party for whose benefit it was introduced. It was so waived in this case by the antecedent confession of the guardian that he was insolvent and unable to pay the money.

Any party who may deem himself aggrieved by any order or decree of the Orphans' Court may appeal therefrom, and it has been decided that any one on whose *interests* any such order *may have a tendency* to operate injuriously is a *party* entitled to appeal. *Parker and Wife vs. Gwynn*, 4 *Md.*, 423. The orders complained of in this case directed suit to be brought on the guardian's bond, and passed the account of the guardian showing his indebtedness as such. This account would be *primâ facie* evidence against the sureties in a suit on the bond, and to this extent would have a tendency to operate injuriously upon their interests. Besides, they had the right and were interested in preventing the passage of any order directing the bond on which they were sureties to be put in suit. The motion to dismiss the appeal is therefore overruled, but as we find no errors in the orders appealed from they must be affirmed.

*Orders affirmed.*

(Decided 16th June, 1869.)