Deakins *vs.* Hollis.—1835.

———————

CATHARINE DEAKINS *vs.* HOLLIS, *Adm'r of* HOLLIS,
*December*, 1835.

A testamentary paper, which professes to cancel a former will, dispose of the balance of the testator's estate after the payment of his just debts, and directs that none of his slaves shall be sold out of the *State,* cannot be considered merely as a revocation, and must be established by the same proof as is demanded for a will.

Persons, incompetent to establish a will, as next of kin and so entitled to the estate, may become competent by an assignment of the interest to which they would otherwise be entitled.

The word *dedi* in a conveyance, which only purports to pass the rights of the grantor to real estate, and not the land itself, does not import a warranty.

Before the remote kindred of a testator, as a brother-in-law or sister, are disqualified from proving his will, it must appear that he left no children.

A will, witnessed by three persons, may be established by two of them, proving a compliance with the legal requisites of attestation and execution.

The date of the execution of a will is no part of the will itself, and if a will has no date, or a wrong date, it may be established, or corrected, by parol proof, showing the real time of its execution.

APPEAL from the Orphans' court of *Charles* county.

On the 8th of May, 1832, the appellant and her husband, *Joseph Deakins*, (since deceased) filed their petition in the Orphans' court of *Charles* county, praying that a certain paper writing, purporting to be the last will and testament of *John Hollis*, deceased, the former husband of the female petitioner, executed on the 6th of February, 1826, should be admitted to probate, and that the letters of administration, which had been granted on his estate to *James Hollis*, (the appellee,) should be revoked.

With this petition, the will referred to was filed, which was proved to have been duly executed.

The defendant, in resisting this application, produced the following paper, executed by the deceased in the presence of three subscribing witnesses, and dated, as appeared by the paper itself, on the 18th of May, 1809.

"I, *John Hollis*, of *Charles* county, *State of Maryland*, having heretofore made a will, which upon more mature reflection I am dissatisfied with, this instrument is therefore intended to do away all and every part of the aforesaid will, cancel it, and after my just debts are paid, the balance of my property must be adjusted agreeably to the laws of the land. Further, it is my wish, that none of my slaves shall be sold out of the *State of Maryland*."

Of the three witnesses who subscribed this paper, one was the sister of the deceased, and another was proved to have married a sister. Its execution was duly proved, by these two subscribing witnesses, who further proved that it was executed in fact in 1829, and not in 1809, as appears by the paper itself.

The competency of the two witnesses was objected to by the appellant, but upon the production by the appellee of a conveyance and release by them to him, for a valuable consideration, of all their interest in the real estate of the deceased, they were admitted by the Orphans' court as competent witnesses to prove the execution of the last named paper; and that court also decided, in opposition to the

objections of the appellant's counsel, that *parol* evidence was admissible to prove the error in the date of said paper.

The same court, on the 14th of January, 1834, rejected the prayer of the appellant's petition, and dismissed the same with costs. The petitioner thereupon appealed to the Court of Appeals.

The cause was argued before BUCHANAN, Ch. J. and ARCHER and DORSEY, Judges.

DUCKETT, for the appellant, contended,

1. When the execution of a testamentary paper is contested, the production of all the subscribing witnesses is necessary, though in ordinary cases, it is not usual to examine the whole, when those before the court can prove that the requisites of the statute have been complied with. *Shaffer's Les. vs. Corbett*, 3 *Harr. and McHy.* 534.

The revoking paper should have been signed in the presence of the subscribing witnesses, and it was necessary to prove that it was so signed. *Act of* 1798, *sub. ch.* 1, *sec.* 4. *Rob. on Frauds*, 287. 3 *Stark Ev.* 1713.

2. It was not competent to prove by parol, that an error had been committed in the date of the revoking paper, and that being in 1809, it can have no influence on a will executed in 1829. *Fitzhugh vs. Runyon*, 8 *John. Rep.* 375. 3 *Stark. Ev.* 995. *Helms. Les. vs. Howard*, 2 *Har. and McHy.* 87. 2 *Saun. Pl. and Ev.* 242. *Lloyd & Motte vs. Ex'rs. of Inglis*, 1 *Dessau. Rep.* 333. *Spicer vs. Lea*, 11 *East*, 312. *Rob. on Frauds*, 10, 22, *(note.)*

3. But supposing that two of the subscribing witnesses are enough to prove the instrument of revocation, the objection upon the score of interest to the two who were examined in the present case is fatal to their admissibility. They are shown by the record to have been interested in establishing the paper, and their deed to the appellee does not restore their competency. The paper executed by them to the appellee is a deed of sale, and not a mere release. There was

neither possession, nor property upon which a release could operate. 2 *Jacob Law Dic. Title Release.* 3 *Stark Ev.* 1691. *Carroll vs. Norwood*, 5 *Har. and John.* 158.

The deed contains an implied warranty of title during the life of the grantors, by force of the word " *dedi.*"   2 *Thos. Coke*, 296, 780, *note 6.*   4 *Cruise*, 433, 434.

ALEXANDER for the appellee.

Parol evidence was admissible to prove the true date of the revocation.   This is the general rule with reference to all other instruments, and there is nothing in the case of a will, to exempt it from the operation of the general rule. The date is perfectly immaterial, and it would be effectual if none was mentioned.   It takes effect from the publication, which may be proved by parol.

The two witnesses who were called, proved that the revoking paper was signed in the presence of all three, and there is nothing in the statute which requires that all should prove the fact.   The statute of frauds only applies to revocations of devises of real estate.   A paper simply signed will revoke a will of personal estate.

But this paper is more than a mere revocation.   It is itself a will, disposing of the testator's property, both real and personal.

The objection to the competency of witnesses cannot be sustained.   Their interest is not shown by the statement, that they were the one, the brother, and the other, the sister of the testator.   He may have left children or other relations, to whom the property would go in case the revoking paper is established.

Supposing however, that the interest is sufficiently manifest, it will not destroy the will, though the statute of Geo. II. avoids the interest which would pass to the witness under it. 3 *Stark. Ev.* 921.

But at all events, their competency is restored by the deed, or release to be found in the record.

It was the clear intention of the parties to that paper to

render the grantors perfectly indifferent as to the issue of this controversy, and its provisions are fully adequate to that object.

ARCHER, Judge, delivered the opinion of the court.

The probate of the will mentioned in the petition is resisted by the defendant, who produced a paper purporting to be the will of *John Hollis*, bearing date, *according to the proof*, subsequent to the will of which probate was offered. This last instrument makes the debts a charge upon the lands, and directs that his slaves shall not be sold out of the State.

These dispositions do in our judgment render the instrument subject to the same proof as is demanded for a will; and it cannot be considered merely as a revocation, although it undoubtedly operates as such.

If proof had been exhibited that *William W. Webster*, and *Francis Hollis*, had been the next of kin to the deceased, and so entitled to his estate, we should be entirely satisfied that they were both rendered competent by the adduction of their deed to *James Hollis*, so far as the will may affect the real estate. For whatever may be the effect of the word " *Dedi* " as importing a warranty, in relation to which we intimate no opinion, we are entirely satisfied that in this conveyance, which only purports to pass the rights of the parties, and not the land itself, to give to the term the signification and legal efficacy contended for, would contradict the clear intention of the parties, as it is to be collected from the description of the thing conveyed, and from the whole structure of the instrument.

But there exists no evidence which disqualifies either of these witnesses from attesting the will, either as to the real or personal estate. It is proved that the one is the brother-in-law of the testator, and the other the sister, but we have no evidence before us to shew that he left no children, which evidence should have been adduced, before the more remote kindred could be disqualified.

The proof then of these two witnesses, we think sufficient to admit the will to probate, at all events as a will of personal property.

They prove all the requisites to the attestation of a will even of real estate ; that the will was executed by the testator in their presence, and that they signed it in his presence as witnesses, and that it was executed, and attested in the same manner before, and by the other witnesses.

The reception of proof as to the mistake in the date of the will, does not, as we apprehend, at all interfere with any established principle.   The date is no part of the will of the testator, and if it had no date, or a wrong date, as it appears to have, the real time of its execution, might be proven. The same rule exists as regards all other instruments of writing, and we can perceive no reason why a will, in this respect, should be placed on different grounds from other deeds.

DECREE OF THE ORPHANS' COURT AFFIRMED.