THOMAS STOCKHAM, Garnishee of GEORGE STOCK-
HAM, *vs.* ELIZABETH STOCKHAM.

*Parol testimony to aid the Construction of Written
Contracts.*

In 1864, G. S entered into a contract with E. S, by letter, for the purchase
of a farm. The terms of sale, as expressed in a letter of G. S to E. S,
dated Jan'y 11th, 1864, were: "I now offer $11,000 for said farm as it is,
including the wheat in the ground * * * * the farm to be paid for as
follows: whenthe premises are cleared and the deed made and recorded,
with searches of docket, and handed over to me free of cost, I will pay
over $1000, and will give my due bill or surety for balance, after *deduct-
ing my claim* to be paid in all, January, 1865; neither party to charge
or claim any interest." Several letters had passed between the parties
in relation to the purchase and the claim of G. S against E S, prior to
the one containing the definite offer of terms. An offer was made at the
trial to introduce the prior correspondence to explain the terms of the
contract. HELD:

1st. That no rule of evidence is infringed by resorting, in the construction
of this contract, to all the written correspondence, as well that which
preceded the offer as that which preceded its acceptance. The terms,
limitations and conditions of the contract must be found in the letter of
the 11th of January; one of the essential conditions, however, there
found is, that the vendee's claim shall be deducted from the purchase
money, but as to what that claim is in amount, and of what items it
consists, the letter itself is silent, and this must of necessity be deter-
mined *de hors.*

2d. That the case falls within the general rule that as to the parties or
*subject-matter* of a contract, extrinsic evidence may and must be received
and used to make them certain, if necessary for that purpose; the con-
tract must be applied to its subject-matter by evidence from without.
Such evidence, however, is not to be used to contradict or vary the
written instrument, but to aid, uphold and enforce it as it stands.

3d. That parol proof to show that the farm was worth $15,000 or $16,000,
at the date of the purchase is inadmissible. The price to be paid for the
land is definitely fixed by the contract at $11,000, and if this parol testi-
mony does not contradict the agreement in this respect, it is for every
other purpose irrelevant.

A mistake in the date of a letter may be established and corrected by parol
proof.

Stockham, Garnishee, *vs.* Stockham.

Where an offer is made by letter, an acceptance by written communication takes effect from the time when the letter containing the acceptance is mailed, and not from the time when it is received by the other party.

The acts done by one party after the completion of the contract, in further-ance of his understanding of it, cannot bind the other party, nor is it admissible in aid of the construction of the contract.

The rule that an offer is to be construed most strongly against the party making it, is one of strictness and rigor to be resorted to only when all other rules of exposition fail.

APPEAL from the Circuit Court for Harford County.

George Stockham, on the 11th of January, 1864, pur-chased of Elizabeth Stockham a farm, called " Mile Square," for the sum of $11,000. At the time of the purchase, he held a mortgage on the farm for $6,500, and an undisputed open account and draft against Elizabeth Stockham. By the terms of the sale, these claims were to be deducted from the purchase money; $1,000 was to be paid on taking possession, and the balance the ensuing January, (1865.) The contract of sale was contained in a correspondence between the par-ties, and the question in dispute arose out of the construction of that contract. George Stockham claimed that under the contract he was entitled to interest on his claim up to the time of the purchase, (January 11th, 1864.) Mrs. Stockham disputed this construction of the contract, alleging that by it all interest on the claim had been released. Accordingly, on the 18th September, 1865, she sued out a writ of attachment against George Stockham, as a non-resident, for the unpaid balance of the purchase money, and had it laid in the hands of Thomas Stockham, garnishee.

The terms of the contract and the correspondence are suffi-ciently detailed in the opinion of the Court.

At the trial, several exceptions were taken to the rulings of the Court.

*First Exception :* The plaintiff offered to show, by several witnesses, that at the time of the purchase, the value of the farm was greater than $11,000, the price paid for it. To this

parol testimony, the defendant objected, but the Court overruled the objection and permitted the testimony to go to the jury, to this ruling of the Court the defendant excepted.

*Second Exception :* The defendant, having produced a letter from Elizabeth Stockham to George Stockham, dated February 14, 1864, offered to prove, by parol testimony, that the date of said letter, as written, was a mistake; that the letter was really written on the 14th of *January*, and was received and replied to by George Stockham on the 20th of January, 1864. To this parol evidence, the plaintiff objected, and the Court sustained the objection, whereupon the defendant excepted.

*Third Exception:* The defendant offered in evidence an account, and having given due notice to the plaintiff to produce the same, offered to prove, by parol testimony, that, in compliance with a request contained in a letter from the plaintiff to George Stockham, the account offered had been made out, stating the claim of George Stockham, with interest thereon, down to January 31st, 1864, and had on that day been transmitted by letter to Mrs. Stockham. The plaintiff objected to the admission of the account and parol testimony in relation thereto. The Court ruled the objection good, and the defendant excepted.

*Fourth Exception :* The defendant prayed the Court to instruct the jury as follows :

That on the whole evidence in this case, in ascertaining the amount of the claim of George Stockham against the plaintiff at the time of the purchase of the Mile Square farm from the plaintiff by him, (if the jury shall find such purchase, and that at the time thereof, the said George held a mortgage against the said plaintiff for the payment of $6,500, with interest from the 22d day of February, 1861,) the jury shall compute and allow interest on such mortgage debt from the 22d day of February, 1861, subject to such items of credit in the account in bar or set-off of said George Stockham as are properly applicable thereto. This instruction the Court refused to give, and in lieu thereof, gave the following :

1st. The jury in considering the terms of the contract between the plaintiff and defendant for the purchase of the farm in question, shall confine themselves to the offer contained in the defendant's letter of the 11th of January, 1864, and the plaintiff's acceptance thereof in the letter to Henry W. Archer of March 26th, 1864.

2d. Should the jury believe from the evidence that the offer of the defendant contained, besides the $11,000 purchase money, the interest due on the defendant's claim mentioned in the letter containing said offer, then they shall find for the plaintiff.

The Court further granted a prayer of the plaintiff, " that the alleged offer to purchase the farm, if proven to the satisfaction of the jury, is to be construed most strongly against the party making the offer."

To the rejection of his prayer, to the granting of the prayer of the plaintiff, and to the instructions given by the Court, the defendant excepted, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MAULSBY, ALVEY and ROBINSON, J.

*Stevenson Archer* and *H. D. Farnandis,* for the appellant.

As to the first exception : The parol testimony was irrelevant. If in any way pertinent, as the contract proved and relied upon was in writing, and definitely fixed the value of the land, it did not explain, and could not modify or control the written contract, and, for both reasons, should have been excluded.

The second exception : It was competent to prove and correct the mistake in the date of the letter by parol. The date was not an essential part of the instrument, and, if, omitted, could be supplied, or, if wrong, could be corrected by parol testimony. *Deakins vs. Hollis' Adm'r,* 7 *G. & J.,* 311 ; *Hall vs. Cazenove,* 4 *East.,* 477 ; 2 *Parsons on Contracts,* 554.

This letter was one of the series making up the contract; was part of the contract; was the answer to one, and answered by another letter, put in evidence by the plaintiff.

As to the third exception: The rejected account was admissible, as made at the request of the plaintiff, and as the reply to her letter already in evidence. At the time of its transmission there was no obligatory contract—and no objection to it was made until George Stockham had, according to his understanding of the contract, paid the whole purchase money. Its delivery to the plaintiff is implied. *Bell vs. Hagerstown Bank*, 7 *Gill*, 216.

The first instruction granted by the Court was erroneous: 1st. In confining the contract to two letters of the series in evidence, one being described as dated 26th March, 1864, none such being in evidence, but if intended for the letter of 26th January, 1864, then: 2d. Because it submitted to the jury the construction of a written contract.

The second instruction erred in submitting to the jury the interpretation of the contract, which is a question of law. *Emery vs. Gault*, 6 *Gill*, 199; *Martin vs. Wirgman*, 4 *H. & J.*, 578; *Ferris vs. Walsh*, 5 *H. & J.*, 306; *Garrell vs. Hanna*, 5 *H. & J.*, 412; *Hall vs. Hall*, 6 *G. & J.*, 408.

The prayer of the plaintiff, granted by the Court was bad, because:

1st. It directly submitted to the jury the interpretation of a written instrument. *Baltimore and Ohio Railroad vs. Resley*, 7 *Md.*, 297.

2d. The rule of interpretation given is not universal, and only to be resorted to when other rules of exposition fail. *Varnum & Aspinwall vs. Thruston*, 17 *Md.*, 470.

*Herman Stump* and *George Y. Maynadier*, for the appellee.

The intention of the parties, gathered from the language of the letters containing his offer and her acceptance, shall prevail. *Varnum & Aspinwall vs. Thruston*, 17 *Md.*, 470; 2 *Parsons on Contracts*, 13.

Another rule is, that, in construing a written contract, the Court should give meaning and operation to every clause and word thereof, consistently with the intention of the parties, and to that end may look to the motives and objects to be attained. *Waters vs. Griffith*, 2 *Md.*, 326; *Allegre vs. Insurance Co.*, 6 *H. & J.*, 411; *Jones vs. Plater*, 2 *Gill*, 125.

Another rule is, that, if doubts remain after the application of the recognized principles of interpretation, the contract will be construed most strongly against the party making the offer, or using the doubtful expression. And there would be no injustice in applying this rule here, in the first instance, as George Stockham seems so anxious to appear to promote the welfare of his old step-mother. *Carroll's Lessee vs. Granite Manuf. Co.*, 11 *Md.*, 400.

If the Court shall be of the opinion that, upon a proper construction of the contract in this case, the appellee is entitled to recover, they will sustain the judgment therein, if the appellant has received no injury from the rulings of the Court below, even though such rulings be erroneous; nor will a *procedendo* be granted where it is clear that the appellant must fail in reversing said judgment. *Hanson vs. Campbell's Lessee*, 20 *Md.*, 223; *Benson & Trundy vs. Atwood*, 13 *Md.*, 20; *Dakin vs. Pomeroy & Crafts*, 9 *Gill*, 1; *Glenn vs. Rogers*, 3 *Md.*, 312.

The construction placed upon a contract by one of the parties to it, or acts done in furtherance of his understanding of it, are not binding upon him or either of them. *Ringgold vs. Ringgold*, 1 *H. & G.*, 74; *Hutchins vs. Dixon, Ex'r*, 11 *Md.*, 30; *Varnum & Aspinwall vs. Thruston*, 17 *Md.*, 470; *Key's Ex'r vs. Parnham*, 6 *H. & J.*, 418.

A contract by letter is consummated when the letter of acceptance is mailed. *Story on Con.*, sec. 383; *Chitty on Con.*, 11, *n.*

MILLER, J., delivered the opinion of the Court.

There are errors in the rulings of the Court below requiring a reversal of this judgment, and as the case is to be sent

back for another trial, it is essential to settle the true construction of the contract for the sale of the farm, the only matter of dispute between the parties. . This contract being in writing, effected by means of letters, its construction is to be declared by the Court, and should not be submitted to the finding of the jury.

The offer contained in the letter of January 11th, 1864, from the vendee to the vendor, is in these words: " I now offer $11,000 for said farm as it is, including the wheat in the ground * * * the farm to be paid for as follows: when the premises are cleared and the deed made and recorded, with searches of docket, and handed over to me free of cost, I will pay over $1000, and will give my due bill or surety for balance, *after deducting my claim*, to be paid in all, January, 1865; *neither party to charge or claim any interest*," as expressed in one part of that letter, and in another, " that there may be no misunderstanding, I repeat the terms of payment, $11,000 purchase money, to be paid when deed is made and searches handed over free of costs and possession given, $1000 cash, the balance, *after deducting my claim*, to be paid during January, 1865, this to include wheat in the ground, *neither party claiming or requiring interest*." The purchaser held a mortgage on the farm executed in April, 1861, for $6,500, bearing interest from the 22d of February, 1861, and the vendor was also indebted to him upon a draft for $124.64, and upon open account the items of which are undisputed. The appellee contends that all interest on the mortgage debt, the draft and the open account is relinquished, whilst the vendee insists he is entitled to interest on the whole, down to the date of the consummation of the contract, by acceptance of this offer. Neither view is correct, as will be presently shown by an examination of the whole negotiation and correspondence preceding the offer and its acceptance. The former overlooks the true meaning of the terms " after deducting *my claim*," whilst the latter does violence to the stipulation that "*neither party*" shall "charge or claim any

interest." The previous letters show that the vendor, who was the step-mother of the purchaser, had been for some time anxious to sell her farm and relieve herself from debt; that as early as the spring of 1863, negotiations had been going on, and offers had then been made for it by the present vendee. On the 11th of August of that year, she wrote requesting him to let her know how much she owed him, or how much interest she must pay him, and how much he would take for his mortgage, so that she might know just what price she could afford to take for the farm, as she had heard of a party who might purchase; and also asks him to write the best he could do, as he seemed to decline doing what he had offered to do last spring. To this he replied by letter of the 24th of August, enclosing his account, in which he charges interest on the mortgage debt from the 22d of February, 1861, to the 1st of August, 1863, and interest on the draft to the same date. These are the only charges of interest, which amount to $972.50, and the whole amount of the account thus stated is $7,579.74. In the letter enclosing this account he says: "I can't enclose you your whole account, every thing as .if you were a stranger, and if you could make a good sale we might ask you for the most of· it; if you have a moderate offer we will try to be as moderate, or even more so;" expresses his disinclination to buy, but states he has not refused or declined to make good any offer of last spring, which is about the best he could do. The next letter is that of the 11th of January, 1864, containing the offer, the terms of which have already been stated. In this he states that he revokes all former offers, and now makes this his last and best, only because of the relation in which he stood to her, as he knows he was paying some $3,000 more than he believed the farm to be worth; that he would not give more than $8,000 or 9,000 to a stranger, even if he wanted to buy, and that he bought now to help her condition and not his own. After receipt of this, and before accepting the offer it contained, she again wrote by letter of

the 14th of January, (misdated, according to the proffered testimony, the 14th of February,) in which she says she does not understand what he meant in his letter of the 11th, "by saying neither of us shall claim any interest: when I give possession and a deed are you not then paid? You are making the interest on the farm for the money that will be due me; you surely will not be so hard with me, *unless you will throw off some of the interest due you;*" that she had been reproved for not trying to sell sooner, and that many persons had said he intended to put her off "until the interest eats up the farm," &c., but "she had waited patiently as possible and trusted on, encouraged by his kind words; that one of his letters had stated he '*would throw off a good deal of interest;*' please make the sum $7,000, then when my debts are paid I will not have $1,000 left; indeed it will be little more than poorhouse allowance," &c. In reply to this he writes by letter of the 20th of January, in which, after acknowledging receipt of her's of the 14th inst., he says she does not say by it whether she will or will not accept his offer; "if you do accept it I will try to comply with my promise; if you do not accept it, and will sell to others, and I hope at better rates, I will deduct $500 from my claim on the payment of the money, which is some evidence I do not want the interest to eat up the farm;" he then expresses his indignation at those who may have charged him with sinister motives in the matter, and tells her to sell the farm to them; that he thinks he has offered from $2,000 to $3,000 more than it is worth to him, for the sake of her and her's only, and that much more than he would give to strangers, even if he wanted to buy, and therefore he "could make no better offer." After this she wrote another letter, which he received on the 25th, in which she states that though she had not accepted, she had not refused his proposal, and says: "I only want to beg a little better bargain; the $1,000 I must pay away to my children, and pay them interest for the balance, and you know it is hard to pay interest on what I owe and not get any on what

is coming to me, nor will I have one dollar to live on for one year, whatever may befall me; you did not bind me to any set time, I consider you have made the offer in the way that allows a reasonable time to make up my mind; please allow me a week or a little more, and I will send it in; my case is desperate and my doom is sealed, and only waits for you to sign my death warrant; for God's sake answer this as soon as possible and say just what your claim shall be if I accept your terms.   I appeal to your mercy, you that have given away so much money, and to many that were less deserving than I. I hope this may be the last time I shall ever ask mercy from any but God.   I repeat, please answer this immediately and do not keep me in suspense, for it has almost broke my heart." Before receiving any reply to this she directed Mr. Archer to write the letter of the 26th of January, substantially accepting the offer, and on the 28th of January, also wrote herself fully accepting that offer, in case he had not received the letter of Mr. Archer to the same effect.   On the same day, the 28th, he wrote to Mr. Archer acknowledging receipt of his of the 26th, admitting it to be an acceptance of the offer.

This correspondence removes all obscurity and uncertainty that may have hung over the controverted clauses in the letter of the 11th of January, 1864.   In our opinion, it is perfectly clear the "claim" to be deducted is the claim of $7,579.74, sent to the vendor in August, 1863, and in her possession when the offer in question was made, and the clause, "neither party to charge or claim any interest," means that no interest should be charged on *that claim,* and that the vendor was to have none on the deferred instalment of the purchase money.   By this construction, effect is given to every clause and word of the offer, and a fair and reasonable interpretation given to the contract.   The vendee relinquishes interest on his mortgage debt and on the draft beyond the 1st of August, 1863, and agrees to charge none on the other items of his account, and the vendor consents to claim none on the balance due her to be paid in Jan-

uary, 1865. The whole tenor of the correspondence clearly discloses this to have been the intention of the parties at the time the contract was made. That the vendee never supposed he had waived all interest on his mortgage debt, is too plain to admit of question, and however much our feelings and sympathies may be enlisted in behalf of the vendor by her distressed condition and pathetic appeals to him from whom she thought herself entitled to ask and receive more favorable terms, we cannot convince our judgments that she, at any time before the offer was accepted, ever interpreted it as going to the extent she now insists upon. These very appeals themselves constrain us to this conclusion, for if she had understood the offer as abandoning all claim to any interest on this large mortgage debt, they show she would have accepted it without hesitation, because that gave her more than the utmost she afterwards vainly implored from the mercy of her creditor.

No rule of evidence is infringed by resorting, as we have done in our construction of this contract, to all the written correspondence, as well that which preceded the offer as that which preceded its acceptance. The terms, limitations and conditions of the contract must, it is true, be found in the letter of the 11th of January, and these are perfectly intelligible, as stated on the face of that letter. One of the essential conditions, however, there found is, that the vendee's claim shall be deducted from the purchase money, but as to what that claim is in amount, and of what items it consists, the latter itself is silent; and this must, of necessity, be ascertained by evidence *de hors.* The case, therefore, on this point, falls within the general rule that, as to the parties or *subject-matter* of a contract, extrinsic evidence may and must be received and used to make them certain, if necessary for that purpose. The contract must be applied to its subject-matter by evidence from without. Looking to this evidence, (which, in this case, is in writing,) we clearly discover that claim to be in amount and items that which had been

sent to the vendor in August, 1863, and this being settled, the meaning of the clause relating to interest is at once removed from every shadow of uncertainty; the whole contract becomes entirely plain in force and application, and substantial effect is given to every clause and word. The rule that parol or extrinsic evidence will never be permitted to *contradict or vary* the terms of a written contract, is certainly a cardinal one, resting upon the fundamental principle that the law will not allow a contract to be made for parties different from that which they have made for themselves, but it is equally a certain and indisputable rule that such evidence is admissible to ascertain and make certain the parties and subject-matter of an agreement, to apply the contract to its subject, to prove any collateral, independent fact about which the written agreement is silent, to remove what are termed (and often inaccurately termed) latent ambiguities, and as this Court has said in *McCreary vs. McCreary*, 5 *G. & J.*, 157, quoting from *Phillips on Evidence*, "though an ambiguity, apparent on the face of a written instrument, cannot be explained by extrinsic evidence, yet, when a question arises as to the general intention of the parties concerning which the instrument is not decisive, it has been held that proof of independent facts, collateral to the instrument, may be properly admitted." In all cases of this kind, such evidence is used, not to contradict or vary the written instrument, but to aid, uphold and enforce it as it stands. Authorities, of which a multitude exists, need not be cited to sustain propositions so well settled and familiar as these. We cannot, however, forbear a reference to 2 *Parson's on Cont.*, 548, where an illustration, peculiarly apposite to the case before us, of the application of these rules, is thus put: "If a negotiation be conducted in writing, and even if there be a distinct proposition in a letter and a distinct assent making a contract, and then the parties reduce this contract to writing, and both execute the instrument, this instrument controls the letters, and they are not permitted to *vary* the *force* and *effect* of the in-

strument, although they may be *sometimes of use in explaining its terms."*

We now proceed briefly to dispose of the questions presented by the several rulings to which exceptions were taken :

1st. The parol proof in the first exception, to the effect that the farm was worth $15,000 or $16,000 at the date of the purchase, is clearly inadmissible. The price to be paid for the land is definitely fixed by the contract at $11,000, and if this testimony does not directly contradict the agreement in this respect, it is for every other purpose entirely irrelevant. It furnishes no aid in explaining or interpreting any part of the contract, even if it should for a moment be conceded to be admissible for that purpose. It should have been rejected.

2d. The letter from the vendor, excluded in the second exception, ought to have been admitted in evidence upon proof that it was written on the 14th of January, was received by the vendee on the 20th of that month, and by mistake was dated the 14th of February. It is one of the series of letters written, as is apparent on its face, and from the letter of the purchaser in reply thereto before acceptance of the offer, and, as we have already decided, is to be considered in the construction of the contract. There is no difficulty in allowing the mistake as to its date to be established and corrected by parol proof. *Deakins vs. Hollis,* 7 *G. & J.,* 311; 2 *Parson's on Cont.,* 554.

3d. The ruling in the third exception is correct. Where an offer is made by letter, an acceptance by written communication takes effect from the time when the letter containing the acceptance is mailed, and not from the time when it is received by the other party. Such is now the settled doctrine of both the English and American authorities, and was so decided by this Court in the case of *Wheat vs. Cross,* 31 *Md.,* 103. See, also, *Adams vs. Lindsell,* 1 *Barn. & Ald.,* 681; *Dunlop vs. Higgins,* 1 *House of Lords Cases,* 381; 1 *Parsons on Cont.,* 406, *note* (*k.*) This contract was, therefore, closed as early, at least, as the 28th of January, and the

excluded account, charging interest on the claim for $7,579.74 from the 1st of August, 1863, down to the 31st of January, 1864, was not rendered and sent to the vendor until the last-named day, and, consequently, after the contract was completed. It is well settled that a Court cannot be aided in the construction of any agreement by the acts which the parties may have done under it, nor is a party bound by any construction which he may have put on the instrument, (*Ringgold vs. Ringgold*, 1 *H. & G.*, 74; *Hutchins vs. Dixon*, 11 *Md.*, 40; and, *a fortiori*, the acts done by one party after the completion of the contract in furtherance of his understanding of it, cannot bind the other party, or be admissible in aid of its construction.

4th. The defendant's prayer was properly rejected, if for no other reason, because it failed to instruct the jury down to what period they should allow interest on the mortgage debt. As we have shown, interest is to be allowed on this debt only to the 1st of August, 1863, as stated in the account sent to the vendor in that month.

The two instructions given by the Court, as well as that granted at the instance of the plaintiff, were open to the objection that they left to the jury the construction of the contract, which was a question of law to be decided by the Court; but it does not appear from the record that any such objection was taken at the trial, and in such case this Court cannot, since the Act of 1862, ch. 154, consider the instructions defective for that reason. But, whether construed by Court or jury, the contract must be interpreted upon the same evidence and by the same rules, and, as we have before said, it was error to tell the jury that, in considering its terms, they must confine themselves to the letter of the 11th of January, and its acceptance by the letter of Mr. Archer, and to allow them to find that the offer contained a waiver of all interest on the debt due the defendant, as was done by the instructions which the Court gave. The rule that the offer is to be construed most strongly against the party making it is one of strictness and

rigor, to be resorted to only when all other rules of exposition fail. We have shown there is no necessity in this case for its application, and the plaintiff's prayer, which adopts it as applicable to this contract is, for that reason, erroneous, and should have been rejected.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 4th March, 1870.)