# AMERICAN BONDING COMPANY OF BALTIMORE,
## A Body Corporate,

*vs.*

# UNITED STATES FIDELITY AND GUARANTY
## COMPANY, A Body Corporate.

*Bonding companies: re-insurance agreement; limitations of
risk, and conditions.  Construction.
Misrepresentation.*

A re-insurance agreement between two bonding companies by
which one agreed to re-insure the other, or to pay to it one-
eighth of any sums which the re-insurer should become liable
to pay, and pay, under a certain bond on which the re-insured
had become liable, contained the following provision: "pro-
vided the amount deposited in said bank, as such depository,
at any one time, shall not exceed the sum of four hundred
thousand dollars." In construing this re-insurance agreement,
it was held to be the intention of the parties that this clause
was to be a limitation, and not a condition, of liability.    p. 201

Under an application for re-insurance, the applicants based
their stand as to the condition of a bank, the principal of the
bond, upon the publications in the current number of the *Bank-
ers' Register* and the *Bankers' Directory;* there was no evidence
that the information as given was incorrect, and no evidence in
the record to sustain a defense of misrepresentation, except that
the bank failed within three months after such representations
were made: *held,* that such evidence was insufficient to sustain
the defense of alleged misrepresentation.                :    p. 202

In construing written instruments, the intention of the parties is to be gathered from the entire agreement and from all its provisions considered together, and not from specific or fragmentary parts of the instrument.                              p. 203

*Decided June 27th, 1917.*

Appeal from the Superior Court of Baltimore City. (STANTON, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Edward Duffy,* for the appellant.

*Edgar Allan Poe* (with a brief by *Bartlett, Poe & Claggett*), for the appellee.

PATTISON, J., delivered the opinion of the Court.

In the State of Pennsylvania certain banks, banking institutions and trust companies are designated as depositories in which moneys belonging to the Commonwealth are deposited. The statute of that State (Acts of 1897—131) provides:

"Sec. 1.  That on or after the first Monday of May, 1898, the State Treasurer of Pennsylvania shall require and collect from each bank, banking institution or trust company, in which funds of the State are deposited, interest on the amount of said deposit at the rate of two per centum per annum.

"Sec. 2.  The State Treasurer before making such deposits shall require each bank, banking institution or trust company to give a good and sufficient bond, containing a warrant of attorney to confess judgment

in favor of the Commonwealth in double the amount
of the contemplated deposit, with sureties to be ap-
proved by the Board of Revenue Commissioners of the
Commonwealth of Pennsylvania, and no deposit shall
at any time be greater than one-half of the amount of
the bond furnished by said depository.   And further,
the said bond or bonds so given shall include a special
obligation to settle with and pay to the State Treas-
urer, for the use of the Commonwealth, the amount of
interest as it shall become due, semi-annually."

On the 31st day of December, 1902, while said Act was in
force, the Enterprise National Bank of Allegheny, Pennsyl-
vania, one of the designated depositories of that year and for
years thereafter, executed its bond No. 285863 to the Com-
monwealth of Pennsylvania in the penalty of eight hundred
thousand dollars ($800,000), containing the following pro-
visions:

"The condition of this obligation is such that if the
above bounden Enterprise National Bank of Alle-
gheny, Pa., shall faithfully and honestly keep and
account for such funds, moneys, chattels or other prop-
erty of the Commonwealth of Pennsylvania, which
now are or shall hereafter remain on deposit with or be
in custody and keeping of the said Enterprise National
Bank of Allegheny, Pa., and shall pay over, deliver and
account for the same, and any and every part thereof,
from time to time and at any time when the same
shall be demanded, to or upon the order of the said
Frank G. Harris, State Treasurer as aforesaid, or of
his successor in office, and shall also from time
to time, when the same shall be demanded by
the said Frank G. Harris, or his successor in office,
pay to him or to his order for the use of the Com-
monwealth the whole or any part of such sum or sums
of money deposited as aforesaid as the said Enterprise
National Bank of Allegheny, Pa., may owe to the Com-
monwealth of Pennsylvania; and shall also pay over

to the said Frank G. Harris, State Treasurer, or his successor in office, for the use of the Commonwealth, interest on said moneys at the rate of two per centum per annum, payable semi-annually, then this obligation to be void, otherwise to be and remain in full force and virtue.

"And, further, the obligor above named, upon the happening of any default in the payment of principal or any installment of interest, when the same becomes due and payable according to the terms hereof, hereby authorizes and empowers any attorney of any court of record in Pennsylvania or elsewhere to appear for and confess judgment for the above sum, with or without declaration, with costs of suit, release of errors, without stay of execution, and with five per centum added for collections fees, and the obligor doth also hereby waive the holding of inquisition on any real estate that may be levied on by virtue hereof. The obligor further agrees that execution may issue upon such judgment so confessed for the full amount of money and accrued interest thereon that may be due and owing from it to the said Commonwealth of Pennsylvania, upon filing a suggestion in writing in the court wherein such judgment shall be entered."

Upon the foregoing bond is found the following endorsement:

"For value received, we do hereby jointly and severally bind ourselves and become security to the Commonwealth of Pennsylvania for the payment of the foregoing bond, and the faithful performance by the said Enterprise National Bank of Allegheny, Pa., of the conditions of the said bond, according to its terms, and in case of a breach of any of the conditions of the foregoing bond, we hold ourselves bound as principals for any debts arising thereunder, and agree to answer for the same without regard to and independently of any action taken against the said Enterprise National

Bank of Allegheny, Pa., and whether the said bank be
first pursued or not.

"And further, we do hereby authorize and empower
any attorney of any court of record in Pennsylvania or
elsewhere to appear for and confess judgment against
us, and each of us, for the sum of eight hundred thou-
sand ($800,000) dollars with or without declaration,
with costs of suit, release of errors, without stay of
execution, and with five per cent. added for collection
fees; and we do further hereby waive and release all
relief and benefit from any and all appraisement,
inquisition, stay of exemption laws of this State or
any State now in force or hereafter to be passed. Said
collection fee is hereby directed to be added in and con-
stitute a part of said debt and judgment. And we fur-
ther agree that execution may issue upon such judg-
ment so confessed for the full amount of money and
interest that may be due and owing from said bank to
the Commonwealth, with attorneys' commissions, upon
filing a suggestion in writing in the county wherein
such judgment shall be entered.

"As witness our hands and seals this 31st day De-
cember, in the year of our Lord one thousand, nine
hundred and two.

                    The United States Fidelity & Guaranty
(Corporate Seal)          Company.
                    (Signed)   Edw. J. Penniman,
                                 2nd Vice-President.
                    (Signed)   W. W. Symington,
                                 3rd Asst. Secretary."


On the 12th day of October, A. D. 1905, the appellee still
remaining bound as surety on the aforesaid bond, the follow-
ing re-insurance agreement, drawn by a representative of the
appellant, the American Bonding Company, was duly exe-
cuted by it and the appellee, the United States Fidelity &
Guaranty Company:

"Whereas the 'Re-Insured' has issued its certain
bond or guarantee, numbered 285863, and bearing date

the 31st day of December, 1902, in the sum of eight hundred thousand ($800,000) dollars, guaranteeing the Enterprise National Bank, Allegheny, Pennsylvania, as a depository of the Commonwealth of Pennsylvania, and has applied to the 'Re-Insurer' for re-insurance or counter security to the extent of the sum of fifty thousand dollars ($50,000), or one-eighth of any such sum or sums as the 'Re-Insured' may become liable to pay, and pay, under or by virtue of said Bond No. 285863, a copy of said bond being hereto attached.

"Now, therefore, the 'Re-Insurer,' in consideration of the sum of one hundred ($100) dollars, to be paid by the 'Re-insured' to the 'Re-insurer,' the receipt of which is hereby acknowledged, subject to the following provisions, covenants and agrees to pay to the 'Re-insured' one-eighth of any sum or sums which the 'Re-insured' shall become liable to pay, and pay, under said bond during a period of one year beginning March 10, 1905, and ending March 10, 1906; and also a like proportion of all expenses, costs and counsel fees incurred by the 'Re-insured' in investigating, settling or resisting any claim made, or defending or attempting to defend any action brought upon said bond.

"Provided the amount deposited in said bank, as such depository, at any one time shall not exceed the sum of four hundred thousand ($400,000) dollars; and

"Provided that the 'Re-insured' shall not be liable to the 'Re-insured' hereunder for a greater sum than fifty thousand ($50,000) dollars and provided that the said 'Re-insurer' shall be entitled to share in the proportion fifty bears to four hundred, with the 'Re-insured' all rights, resources and benefits which the 'Re-insured' may have against the said Enterprise National Bank and the Commonwealth of Pennsylvania, arising out of the provisions, reservations and conditions of said Bond No. 285863, etc."

On the 18th day of October, 1905, the Enterprise National Bank was closed by the Comptroller of the Treasury

of the United States and placed in the hands of a receiver, because of its insolvency, and on or about the 21st day of the same month demand was made by the Treasurer of the State of Pennsylvania upon the appellee, as surety on said bond, for the losses that the State had sustained because of the bank's failure to account for and pay over to the State all deposits made with it and such interest as it under the bond was required to pay.

In response to this demand, the appellee thereafter paid over to the Treasurer of the State a large sum of money, representing the amount of deposits not accounted for and interest as aforesaid.

This suit was then brought and a judgment recovered by the appellee against the appellant upon said re-insurance agreement for the sum of twenty-nine thousand, two hundred and ninety-nine dollars and forty-two cents ($29,-299.42).

It is from that judgment this appeal is taken.

There are but two exceptions found in the record, one upon the admission of evidence and the other upon the rulings of the Court on the prayers.

We will first consider the action of the Court upon the prayers.

The plaintiff offered but one prayer, which was granted. The defendant offered three, all of which were rejected.

The defendant's first and second prayers and the demurrers to its second and fifth pleas raise the question of defendant's liability under its re-insurance agreement with the plaintiff.

There were outstanding and in force at the time of the execution of the said re-insurance agreement five other similar bonds of the Enterprise National Bank that were not secured by the plaintiff. These bonds were of the following dates and penalties: May 24th, 1898, two hundred thousand dollars; August 23, 1898, one hundred thousand dollars; April 16, 1901, one million dollars; June 27, 1902, one mil-

lion, two hundred thousand dollars; January 6, 1904, one million dollars.

On December 30th, 1902, the day preceding the execution of the bond upon which the plaintiff is surety, there was standing to the credit of the Commonwealth of Pennsylvania, on the books of the bank, the sum of five hundred and seventy-five thousand ($575,000.00) dollars; on July 1st, 1905, the sum of one million, eighty thousand ($1,080,-000.00) dollars, and from October 2nd, 1905, up to and including October 18th, 1905, the sum of one million and thirty thousand ($1,030,000.00) dollars.

It will thus be seen that at the time of the execution of the re-insurance contract, and for a long time prior thereto, there was upon the books of the bank, to the credit of the Commonwealth, an amount greatly in excess of four hundred thousand ($400,000) dollars, and because of this fact it is contended by the defendant that it is relieved of all liability under its re-insurance agreement.

This contention is based upon the clause found in the agreement where it is said, "provided the amount deposited in said bank as such depository, at any time, shall not exceed the sum of four hundred thousand ($400,000.00) dollars."

This provision is construed by the defendants to be a *condition* of liability, and by the plaintiff a *limitation* of liability and not a *condition* of liability.

It is contended by the defendant that under the aforegoing clause of the agreement if, at any time during the life of the agreement, the amount of deposits upon the books of the bank, to the credit of the Commonwealth, exceeded four hundred thousand ($400,000.00) dollars, such fact relieved the defendant of all liability under its said reinsurance agreement, although the aggregate penalties of other bonds, with the penalty of the bond before us, were at all times twice the amount of deposits to the credit of said Commonwealth. In other words, the amount of deposits in said bank to the credit of the Commonwealth deposited therein

under all the bonds were not at any time to exceed the sum of four hundred thousand ($400,000.00) dollars. If they did, the defendant was relieved of all liability under its said re-insurance agreement, and as the amount of deposits under all of the bonds was in fact at all times during the life of the agreement in excess of said sum, the defendant thereby escaped all liability under its said agreement with the plaintiff.

On the other hand, the plaintiff contends that this provision of the agreement was intended only to limit the liability of the defendant to deposits made under the bond upon which it was surety not exceeding four hundred thousand ($400,-000.00) dollars, and that it had no relation to deposits made under other bonds, but related only to those made under the bond secured by the plaintiff, and that the effect of such provision was simply to limit the liability of the defendant to the amount of deposits therein named.

The Court below adopted the contentiton of the plaintiff, and so held in its rulings upon said prayers and demurrers.

The question raised is one of construction to be answered by ascertaining the intention of the parties gathered from the entire agreement under consideration and from all of its provisions considered together, and not from specific or fragmentary parts of the instrument. (*Elliott on Contracts,* sec. 1514.) ·

The subject-matter of the agreement and the knowledge of it which the parties possessed, the object which they sought to accomplish and the inducements which they had for dealing with each other as they did, must be considered. "Courts, in the construction of contracts, look to the language employed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and, in that view, they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application

of the language to the things described; *Nash* v. *Towne,* 5 Wallace, 689." *Balto. & Ohio R. R. Co.* v. *Brydon,* 65 Md. 215; *First National Bank of Balto.* v. *Gerke,* 68 Md. 456.

Both of the parties to this suit are bonding companies, authorized under the provisions of their respective charters to become sureties on bonds of the character of the one before us.

A copy of said bond of the bank dated the 31st day of December, 1902, was attached to the re-insurance agreement at the time of the execution of the latter instrument and its provisions were well known to the defendant. The plaintiff became security to the Commonwealth of Pennsylvania for the payment of said bond and for the faithful performance by the bank of its conditions according to its terms, and in case of a breach of any of its conditions the plaintiff was to be held as principal for any debts arising thereunder, and by it the plaintiff authorized "any attorney of any court of record of Pennsylvania or elsewhere to appear for and confess judgment against it for the sum of eight hundred thousand dollars with costs of suit, without stay of execution and with five per cent. added for collection fees."

On July 13th, 1905, the plaintiff applied to the defendant for re-insurance on a number of bonds upon which it was surety, including the aforesaid bond of the Enterprise National Bank. The defendant by letter of the following day declined to re-insure the plaintiff upon some of said bonds, but agreed to reinsure it upon the bond of the Enterprise National Bank to the amount of fifty thousand ($50,000) dollars, but the agreement was not executed until October 12, 1905, nearly three months thereafter. It contained the statement that the plaintiff haid applied to it "for re-insurance or counter security to the extent of fifty thousand ($50,000) dollars, or one-eighth of any such amount or sums as the re-insured may become liable to pay and pay under and by virtue of said bond."

The agreement then states that in consideration of one hundred ($100.00) dollars, to be paid by the re-insured, the re-insurer covenants and agrees to pay to the re-insured *one-eighth of any sum or sums which the re-insured shall become liable to pay and pay under said bond,"* etc.

It is at this point in the agreement that we reach the clause under which the defendant claims to be relieved of all liability under the agreement.

In the bond there is no limitation as to the amount to be deposited under it.   The statute provides that "no deposits shall at any time be greater than one-half the amount of the bond," but in the bond there is no such limitation, and hence the draughtsman of the re-insurance agreement might well have thought it wise, if not necessary, that there should be some express restriction or limitation in the agreement as to the amount of deposits to be made under the bond for which it should be held liable.

In doing so he would only be taking such precaution as a careful person would exercise in endeavoring to safeguard the interest of his principal or client.

The object of the re-insured in the execution of the re-insurance agreement was to have the defendant assume at least a part of the risk assumed by it as surety upon the bond of the Enterprise National Bank.

It is not disclosed by the record that either the plaintiff or defendant had knowledge of the other bonds executed by the bank as such depository, but it is, we think, fair to assume that the plaintiff knew of said bonds and he probably knew the approximate amount of deposits upon the books of the bank to the credit of said Commonwealth, which at the time of the execution of the re-insurance agreement greatly exceeded four hundred thousand ($400,000.00) dollars.

If he knew these facts, it is difficult to understand why he should have sought and accepted such re-insurance, the value of which depended upon the non-existence of such facts, and on the other hand, if he had no knowledge of said facts, it is

still hard to believe that he would intentionally have accepted re-insurance, when the liability of the re-insurer was dependent upon a condition not contained in the bond and one over which the plaintiff had no control.

We may also add that the defendant had agreed in his letter above mentioned to reinsure the plaintiff on said bond of the Enterprise National Bank to the extent of fifty thousand ($50,000.00) dollars, without any mention of a condition of liability as is here set up by the defendant in its construction of the agreement, but on the contrary it was said in that letter, "on the Enterprise National Bank we are willing to assume one-eighth of four hundred thousand ($400,-000.00) dollars, the estimated maximum deposit. It is understood, however, that in all re-insurance papers our liability is to be based strictly on the understanding that the *maximum deposits under the bonds executed by you* will not exceed one-half.

"In the Enterprise National Bank we are willing, for an annual premium of one hundred ($100.00) dollars net, to guarantee you against one-eighth of any loss you may sustain under the bond executed by you, with a maximum liability on our part of fifty thousand ($50,000.00) dollars."

Following the principles above laid down that should control Courts in construing agreements and contracts such as the one before us, we think, after a full consideration of its subject-matter and the objects sought to be accomplished by the parties who executed it, and the motives and inducements which led them to deal with each other, that it was their intention that the clause in question was to be a *limitation* of liability, and not a *condition* of liability.

In a subsequent clause of the agreement it is also provided "that the re-insurer shall not be liable to the re-insured hereunder for a greater sum than fifty thousand ($50,000.00) dollars."

It is urged by the defendant that. if the preceding clause is a *limitation* of liability and not a *condition* of liability,

that there was no necessity of the subsequent clause in the agreement.

Under the bond upon which the defendant re-insured the plaintiff, he, the plaintiff, was not only liable for deposits that the bank failed to account for and pay over, but for interest, costs and expenses therein mentioned.

The limitation of deposits to four hundred thousand ($400,000.00) dollars did not limit the liability of the defendant to one-eighth of that sum, or fifty thousand ($50,-000.00) dollars. It was still liable for one-eighth of said additional items for which the plaintiff was liable as surety on said bond, and it was to further limit the defendant's liability to fifty thousand ($50,000.00) dollars that this clause was no doubt inserted in the agreement; but whatever may be said of this explanation, it often occurs in the preparation of papers that the draughtsman in abundance of caution will several times insert the same provisions and limitations clothed in different language.

It may also be said in reply to defendant upon this point, that although it is plainly expressed in its aforesaid letter that the maximum deposits of ($400,000.00) dollars mentioned therein had reference only to the deposits made *under the bond secured by* the plaintiff, we nevertheless find in said letter the limitation that the maximum liability of the defendant shall not exceed fifty thousand ($50,000.00) dollars.

The defendant's rejected third prayer asks "the Court to instruct the Court, sitting as a jury, that inasmuch as the evidence shows that the plaintiff did represent the capital of the Enterprise National Bank to be two hundred thousand ($200,000.00) dollars and its surplus to be two hundred and forty-nine thousand ($249,000.00) dollars, then under the pleading and evidence in this case the verdict must be for the defendant."

The defendant in his first plea alleged that the plaintiff represented to it that the capital stock of said Enterprise

National Bank was two hundred thousand ($200,000.00) dollars, and that it, the said bank, had a surplus of two hundred and forty-nine thousand ($249,000.00) dollars, and that said representation was material to the risk, and was relied upon by the defendant and was an inducement to its entering into the re-insurance agreement. The plea then alleges that the "said representation was untrue, both at the time it was made and at the time of the consummation of the said re-insurance agreement."

This plea was traversed and issue was joined thereon.

In the course of the trial the plaintiff offered in evidence a letter dated July 13, 1905, from the superintendent of the bond department of the plaintiff company to the assistant to the president of the defendant company, in which a list of depository bonds secured by the plaintiff, including said bond of the Enterprise National Bank, was submitted to the defendant that it might select therefrom those that it was willing to re-insure and to state the amount of such re-insurance.

In the list so furnished the capital stock and surplus of each bank is stated. The capital stock of the Enterprise National Bank is placed therein at two hundred thousand ($200,000.00) dollars and the surplus at two hundred forty-nine thousand ($249,000.00) dollars.

The admission is found in the record that the statement made as to the capital and surplus of said bank was taken by the defendant from the *Bankers' Register* of January, 1905. Mr. Stryker, assistant to the president of the defendant company, to whom the aforesaid letter was written, testified that there were two publications, one the *Bankers' Register* and the other the *Bankers' Directory;* both were equally reliable, and that they were relied upon for the purpose of underwriting as being the only available source of information outside of the published statement of the bank, or such information as might be on file in the Comptroller's office.

This is practically all the evidence found in the record as to such alleged misrepresentation. Upon such evidence, the Court below was clearly right in refusing to direct a verdict for the defendant. It is not even shown that the representation complained of, gathered from the sources stated, was untrue when made, if untrue at all. The assumption that it was untrue seems to be based solely upon the bank's failure three months after such representation was made.

The plaintiff's first prayer, we think, was properly granted upon the state of the record.

The remaining exception is to the admission in evidence of the letter of July 14, 1905, from the defendant to the plaintiff, to which we have already referred. This letter, so closely connected with the re-insurance agreement that was afterwards made, reflects upon the intention of the parties in the use of the language employed therein, and was, we think, properly admitted. *Stockham, Garnishee, v. Stockham,* 32 Md. 207.

As we find no errors in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed, with cost to the appellee.*